NEW ENGLAND WOOD HEEL CO. *vs.* JOHN D. NOLAN & others.

Essex. May 23, 1929. — June 27, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Unlawful Interference. Labor Union. Equity Jurisdiction*, Plaintiff's clean hands. *Contract*, What constitutes, Validity, By members of labor union. *Strike. Equity Pleading and Practice*, Appeal, Findings by judge.

Upon appeal from the final decree in a suit in equity in the Superior Court in which the evidence, including oral testimony, was taken by a stenographer appointed under G. L. c. 214, § 24; Equity Rule 29 (1926), it is the duty of this court to examine the evidence and to draw its own conclusions of fact; but the findings by the judge who heard the suit must stand unless plainly wrong.

In a suit in equity by an employer against the officers and members of a labor union, it was found that, upon the expiration of an agreement between the plaintiff and the union for a closed shop, negotiations for a new agreement having failed, the plaintiff paid off and discharged his employees and notified the union that he proposed thereafter to operate an open shop; that the union called a strike at the plaintiff's factory; that the plaintiff thereafter, without regard to membership in the union, hired a new force of employees, many of whom were members of the union who had applied voluntarily to the plaintiff for employment; that the plaintiff, although aware that those employees committed a breach of their agreement with the union in

entering his employ, did not maliciously nor intentionally seek to induce them to violate their union obligations; that the union had agreements with sundry manufacturers in the locality providing that members of the union should not be required to work on materials made in a factory where there was a strike; that the defendants notified such manufacturers who used the plaintiff's product that there was a strike in progress in his factory; and that they picketed that factory, accosted and interfered with the employees of the plaintiff in entering and leaving it, and sought to intimidate the employees and induce them to quit work. A final decree was entered enjoining the defendants from continuing such picketing and attempts to intimidate the plaintiff's employees and to induce them to leave their work, and from inducing other persons not to use the plaintiff's products because of the strike. The decree also provided that the defendants should not be in contempt for taking disciplinary measures within the union against such of its members as had entered the plaintiff's employ. *Held,* that

(1) In view of the findings, the plaintiff was not barred of relief by his having hired union members in violation of their agreement with the union, even if that agreement was valid and enforceable, which was not decided;

(2) The strike was unlawful: it was not justified as intended to prevent union members hired by the plaintiff from interfering with the wage scale adopted by the union by working for the plaintiff for less wages, or to prevent the plaintiff from aiding such members in so doing, or to compel the plaintiff to restore such members to the standard union wages;

(3) Since the strike was unlawful, that part of the final decree enjoining the defendants from inducing other persons not to use the plaintiff's products because of the strike was not improper by reason of the agreement between the union and the manufacturers;

(4) The final decree was proper.

*Whether,* if the strike had been legal, the contract between the union and the manufacturers would have warranted the union in notifying them of the strike, *was not decided.*

BILL IN EQUITY, filed in the Superior Court on January 21, 1929, described in the opinion.

The suit was heard by *Weed,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts found by the judge are stated in the opinion. By his order, a final decree was entered enjoining the defendants from interfering or attempting to interfere with the plaintiff's business "(1) By inducing or persuading, or attempting to induce or persuade any person now or hereafter in the plaintiff's employ to leave their employment; (2) or by persuading, inducing or coercing any per-

son or corporation not to use or deal in the plaintiff's products because of the alleged strike called at the plaintiff's factory by the defendants; (3) or by picketing the plaintiff's factory and obstructing and delaying employees of the plaintiff entering or leaving the same; (4) But the defendants shall not be in contempt of this decree by fining, suspending, expelling or placing upon Probationary Membership Card, if the defendants have the right under the Constitution of the Union so to do, any member of the Union who was such on January 2, 1929, and who, in violation of said Constitution and with the knowledge of the plaintiff thereof, entered the plaintiff's employ on or after said day." The defendants appealed.

*F. W. Mansfield,* (*E. R. Mansfield* with him,) for the defendants.

*J. J. Ryan, Jr., & J. P. Cleary,* for the plaintiff.

PIERCE, J. This is a bill in equity by a manufacturing corporation, doing business in Haverhill, Massachusetts, against eleven individual defendants in their personal capacity, and also as officers and members of a voluntary unincorporated association known as the Shoe Workers Protective Union, District Council No. 1, and Local No. 11 of said District Council, to enjoin them and all other members of the Shoe Workers Protective Union from interfering in any way with the business of the plaintiff by intimidating its employees, by inducing or seeking to induce them to cease their employment by picketing or by their presence about the entrances to the premises of the plaintiff in such a manner that ingress and egress are prevented, delayed or otherwise interfered with, and from persuading or compelling its customers not to purchase goods from the plaintiff. The case comes before this court upon an appeal of the defendants from a final decree granting, with some modifications, the relief prayed for in the bill of complaint. The trial judge made findings of fact which have their source in the testimony of witnesses contained in the record of this appeal, and from the admission of the defendants in their pleadings.

In substance the bill charges that the plaintiff had a working agreement with the Shoe Workers Protective Union under

which the plaintiff hired only members of said union as employees in its factory; that said agreement was in writing and expired by its own limitation on December 31, 1928; that before the expiration of the agreement the plaintiff notified Local No. 11 of District Council No. 1 of the union that it would not enter into any extension nor thereafter deal with the union in any regard; that the plaintiff now has no controversy or relationship with the defendants; that as of December 31, 1928, the plaintiff paid all its employees who were members of Local No. 11 in full for their services to and including December 31, 1928, and notified each of its said employees, none of whom was operating under any written agreement of employment, that it would not thereafter require their services; that since January 1, 1929, it has procured various workers for the operations necessary for the conduct of its business; that it has not attempted to negotiate with the union or with any of its subsidiary locals, and it has had no dealings with the union and desires none; that since January, 1929, certain defendants and other members of the union and of its various locals embraced in District Council No. 1 have attempted by promises, persuasion, coercion, threats and otherwise to induce various persons employed by the plaintiff to cease their employment; they have maintained picket lines in front of and about the plaintiff's premises during business hours, thereby interfering with the ingress and egress of its employees, and have sought by force of numbers to induce or compel said employees to cease their employment; that the certain defendants and various other members of the union and of its subsidiary locals have attempted to persuade or compel various firms and corporations, to whom the plaintiff has been selling its product, not to purchase goods from the plaintiff, and to return to it merchandise previously bought by them.

Upon the reported testimony and the pleadings the trial judge found that the working agreement under which the plaintiff's factory was operated as a closed shop during 1928 terminated on December 31, 1928; that negotiations for a new agreement for 1929 failed; that the plaintiff paid off its employees at the close of December 31, 1928, and notified

the union that it proposed to operate its factory in 1929 as an open shop; that on December 28 and 31 the union duly sanctioned the calling of a strike in the plaintiff's factory unless the plaintiff made an agreement with the union on or before January 4; that a price list and agreement, not, however, calling for a closed shop, were submitted by the union's agent to the plaintiff's officers on January 2, and upon their declining to give the price list and agreement consideration or to deal further with the union, the strike was called; that no members of the union quit work at the factory upon the calling of the strike because no members of the union were then employed by the plaintiff; that since the calling of the strike the defendants have picketed the factory, accosted and in some measure interfered with those who have entered the plaintiff's employ on their way to and from the factory, and sought to induce and even to intimidate not only such employees as are members of the union but others who are not members of the union to quit their work; and that they have also brought to the attention of the manufacturers in Haverhill using the plaintiff's product the fact that a strike is in progress at the plaintiff's factory. He ruled that upon all the evidence the strike called by the defendants at the plaintiff's factory is an unlawful strike.

To the contention of the defendants, set up in their answer, "that the plaintiff does not come into court with clean hands in that it had knowledge of the prior contract of members of the union not to enter into individual contracts of employments and notwithstanding such contracts maliciously induced said members to break them," the trial judge found "upon the evidence that the officers of the plaintiff hired such of its former employees known to them to be members of the union as voluntarily sought employment, aware that such individual contracts of employment were in violation of their union obligations." He stated: "but I am unable to find from the evidence that the plaintiff maliciously sought to procure or induce such members of the union to leave the union or otherwise to violate their union obligations."

It is settled law that questions of fact, as well as of law, may be raised on appeal; that it is the duty of the court in

such a case to examine the evidence and make its own judgments of fact, giving due weight to the findings of the judge below and to the rule that where the testimony before the trial judge is oral, his findings will not be upset unless plainly wrong.  *Cook* v. *Mosher*, 243 Mass. 149, 153.  *Weinstein* v. *Miller*, 249 Mass. 516, 520.  *Needham Trust Co.* v. *Cookson*, 251 Mass. 160, 163.  *Boston Safe Deposit & Trust Co.* v. *Wall*, 254 Mass. 464, 469.  *Witherington* v. *Nickerson*, 256 Mass. 351, 354.  At the outset the question presented is, Was the conduct of the plaintiff such as to bar it from obtaining relief in a court of equity?  *Snow* v. *Blount*, 182 Mass. 489, 491.  Pom., Eq. Jur. (4th ed.) § 397 *et seq.*

Article 1, section 3 of the constitution of the Shoe Workers Protective Union provides: "The approval of an application for membership and the initiation of the applicant as a member of the Shoe Workers' Protective Union constitutes a contract between said member and the said Shoe Workers' Protective Union and his local union, and between said member and every other member of the said Shoe Workers' Protective Union, whereby, in consideration of the benefits and advantages secured to him by reason of his membership therein, he agrees (1) That he will remain a member of the Shoe Workers' Protective Union until he is expelled.   (2) That he will not violate any of the provisions of this constitution or of the by-laws of his local union nor the trade rules of the locality in which he works.   (3) That he will not enter into or sign any individual contract of employment with any person, firm, association or corporation or any contract or agreement which provides that he will not become or remain a member of the Shoe Workers' Protective Union or any local union thereof."   It appeared in evidence "that the officers of the plaintiff knew of this provision.   While there are provisions for expelling a member, nonpayment of dues is not stated as a ground for expulsion."

Whether these provisions constitute a valid and enforceable contract, as the defendants contend, or are void as between the members themselves apart from any possible conflicting rights of the plaintiff, need not be decided here, because the trial judge finds that the plaintiff has not been

guilty of any malicious interference with the union. *Walker v. Cronin,* 107 Mass. 555. *McGurk v. Cronenwett,* 199 Mass. 457, 462. *Anderson v. Moskovitz,* 260 Mass. 523, 526. The trial judge found that, except on January 2, 1929, the plaintiff has employed such of its former employees as applied for work, without regard to union membership; that the factory is fully manned; that "five of the present force were former employees of the plaintiff and about fifty per cent of the plaintiff's present force are now, or had been at some time, active members of the defendants' union but suspended for nonpayment of dues"; and that "Of said fifty per cent, a few had applied for and received withdrawal cards from the union, and a few were in good standing at the time of the hearing, and the remainder stood suspended for nonpayment of dues on the books of the union." Viewing the findings of the judge as a whole, and particularly that part wherein he finds "I am unable to find from the evidence that the plaintiff maliciously sought to procure or induce such members of the union to leave the union or otherwise to violate their union obligations," we infer that the judge believed, and therefore found, that the evidence warranted no stronger conclusion than that the plaintiff employed members of the union under individual contracts which they solicited; that the plaintiff employed them only when such members voluntarily sought employment; and that the plaintiff did not intentionally induce or procure such members to enter into individual contracts with it in violation of their duty to the union. We have read the evidence and considered the contentions of the defendants in this respect with great care, and we cannot find that such conclusions of fact were clearly wrong. It results that the plaintiff cannot be said to be before the court with unclean hands, and because of that supposed fact is not entitled to equitable relief. As there was no inequitable conduct on the part of the plaintiff, it was entitled to be protected in the enjoyment of the contracts of employment which it made with its employees. *United Shoe Machinery Corp. v. Fitzgerald,* 237 Mass. 537. *Hitchman Coal & Coke Co. v. Mitchell,* 245 U. S. 229, 251. See *Berry v. Donovan,* 188 Mass. 353.

On the facts found the trial judge ruled rightly that the strike was unlawful. This ruling was not based upon any findings that the purpose of the strike was to compel the plaintiff to operate a closed shop; as to which see *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 60, 61, and cases cited. It is plain, in the circumstances, that it was not lawful for the defendants to call a strike at the plaintiff's factory (1) to prevent the recalcitrant union members from demoralizing the entire personnel of the union by working for a less rate than they themselves had participated in adopting as proper; (2) to prevent the plaintiff from aiding and abetting those members from carrying out that design; or (3) to compel the plaintiff to restore to the union members the standard union rates; and the cases of *Pickett* v. *Walsh*, 192 Mass. 572, *L. D. Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110, 114, 118, *Folsom* v. *Lewis*, 208 Mass. 336, 338, and *Minasian* v. *Osborne*, 210 Mass. 250, 254, 255, give no countenance to the contention of the defendants that the strike was legal if called for any one of the three purposes above stated. The finding of the trial judge in respect to the matter of picketing, *supra*, in itself was a justification for the ruling that the strike was illegal. *Rice, Barton & Fales Machine & Iron Foundry Co.* v. *Willard*, 242 Mass. 566, 572, 573.

In connection with the issue raised by the second paragraph of the decree the trial judge found: "The working agreement between the plaintiff and the defendants, under which the plaintiff's factory was operated as a closed shop during 1928, terminated on December 31, 1928. Negotiations for a new agreement for 1929 failed. The plaintiff paid off its employees at the close of December 31 and notified the union that it proposed to operate its factory in 1929 as an open shop. On December 28 and 31 the defendant union duly sanctioned the calling of a strike in the plaintiff's factory unless the plaintiff made an agreement with the union on or before January 4. A price list and agreement, not however calling for a closed shop, was submitted by the union agent to the plaintiff's officers on January 2 and upon their declining to give the price list and agreement consideration or to deal further with the union, the strike was called. No

members of the union quit work at the factory upon the calling of the strike because no members of the union were then employed by the plaintiff. Since the calling of the strike the defendants have picketed the factory, accosted and in some measure interfered with those who have entered the plaintiff's employ on their way to and from the factory, and sought to induce and even to intimidate not only such employees as are members of the union but others who are not members of the union to quit their work. They have also brought to the attention of the manufacturers in Haverhill using the plaintiff's product the fact that a strike is in progress at the plaintiff's factory." The position of the defendants on this question is that the union had preëxisting agreements with forty or fifty manufacturers in Haverhill which provided that the members of the union were not required to work on shoes that contained any parts that were made in a factory where there was a strike. As the strike at the plaintiff's factory was illegal, it is unnecessary to decide whether such a contract would justify the union in notifying those with whom it had so contracted of the fact that a strike existed if such strike were legal. We construe the agreements for the purposes of the case to extend only to legal strikes.

It follows that the decree should be affirmed with costs.

*Decree accordingly.*