SERVICE WOOD HEEL COMPANY, INC. *vs.* WILLIAM J. MACKESY & others.

Essex.   January 16, 1935. — January 11, 1936.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Unlawful Interference. Labor Union. Equity Jurisdiction,* To enjoin unlawful interference, "De minimis non curat lex," Plaintiff's clean hands. *Contract,* Modification. *Equity Pleading and Practice,* Waiver.

A contract between a shoe manufacturer and a labor union providing that the manufacturer would use union made heels only could not affect an earlier unexpired sales contract between the shoe manufacturer and a manufacturer of heels whose shop was nonunion, and the shoe manufacturer having broken his contract to buy heels from the heel manufacturer on threat by the union to call a strike if such heels were used, the heel manufacturer was entitled to an injunction restraining the union from so interfering with his contract.

In a suit in equity to enjoin interference by the defendant with the plaintiff's contract rights with a third person, the plaintiff's waiver of damages for past interference did not render the suit trivial nor waive his right to an injunction against further interference.

Under a contract by a shoe manufacturer to buy a definite number of heels from their manufacturer within six months, part only having been bought within that time, the parties could extend the time for full performance and as extended the contract could not be interfered with by third persons for the purpose of compelling the shoe manufacturer to comply with an agreement made with them after the making of such sales contract but before its extension.

In a suit by a heel manufacturer to enjoin a labor union from interfering with his contract for the sale of heels to a shoe manufacturer by a threatened strike against the latter, "unclean hands" of the plaintiff were not shown by the fact that he knew that while the contract was in force the shoe manufacturer had contracted with the labor union to use union made heels only, and thereupon had aided his own employees, who were not members of the union, to form a separate company union and had claimed that his heels were union made.

BILL IN EQUITY, filed in the Superior Court on July 18, 1934.

The final decree appealed from by the plaintiff was entered by order of *Williams*, J.

*W. M. Espovich*, for the plaintiff.

*R. M. Goldstein*, (*G. E. Roewer & J. Bearak* with him,) for the defendants.

RUGG, C.J.    This is a suit by a manufacturer of wood heels to enjoin the defendants, officers and members of the United Shoe and Leather Workers Union, from doing acts to prevent sales by the plaintiff to shoe manufacturers. The case was referred to a master, whose report contains the facts. No appeal was taken from an interlocutory decree confirming the report. The bill was filed July 18, 1934, and the master's report was dated August 1, 1934. The case is here on appeal from a final decree entered October 6, 1934, dismissing the bill with costs. The pertinent facts as found by the master are these: Early in March, 1934, there was a general strike by the defendant union involving virtually all the shoe manufacturers in Haverhill. After many conferences, the strike was terminated on April 9, 1934, by written agreements between the several manufacturers and the defendant union. These agreements provided for closed shops and fixed wages and hours of employment, and contained a clause that . after June 1, 1934, all "wood heels placed on shoes of all types must be

made by Union heel makers." The principal inducements motivating the defendant union in entering into these agreements were to secure for its members the labor included in the actual shoe manufacturing operations and also the work of manufacturing the wood heels supplied to the shoe manufacturers. One of the locals of the defendant union in Haverhill comprised those engaged in making wood heels. One of the shoe manufacturers signing such agreements with the defendant union was a co-partnership known as the Simon Shoe Company. In accordance with such agreement, that company employs only operatives who are members of the defendant union. That company, during nearly all of the seven years it had been in business, had purchased its finished wood heels from the plaintiff, a corporation engaged in Lawrence in the manufacture and finishing of such heels. It had been customary for the plaintiff to agree orally with the Simon Shoe Company, at first annually and more recently semi-annually, on terms for the sale and delivery of wood heels. Early in 1934, they had made such an agreement for the manufacture by the plaintiff and purchase by the Simon Shoe Company, for the ensuing six months, of a specified number of cases of wood heels. The strike reduced production by the Simon Shoe Company during the first part of 1934, and it was therefore agreed that the plaintiff would sell and the Simon Shoe Company purchase, after the expiration of the six months' period, until the agreed number of heels had been delivered.

The plaintiff employs about one hundred thirty persons; they have no connection with the defendant union. In the spring of 1934, the officers and employees of the plaintiff, fearing loss of business arising from the Haverhill agreements, organized a company union having no affiliation with the defendant union. The plaintiff's officers and the Haverhill manufacturers knew that the defendant union would not recognize heels made by members of a company union as made by union heel makers within the meaning of the agreement of ·April 9, 1934. The master found that this organization was a *bona fide* company union. In June,

1934, an officer of the defendant union told the Simon Shoe Company in substance that it would have to get another heel manufacturer, that its contract for the purchase of heels from the plaintiff would not be recognized and that it must secure union made heels. In the following month, the union made it clear to the Simon Shoe Company that, unless it secured and used at its factory union made heels, there would be a strike or walkout. Thereupon, the Simon Shoe Company ceased to do business with the plaintiff and has since bought heels of another manufacturer. The Simon Shoe Company signed the agreement of April 9, 1934, with the defendant union freely and voluntarily. The arrangements between the plaintiff and the Simon Shoe Company for the sale and purchase of wood heels were voluntarily made and mutually satisfactory, and but for the interference of the defendant union the plaintiff would still be making and delivering wood heels to the Simon Shoe Company. That company acted reasonably in supposing that, if it continued to deal with the plaintiff, the defendant union would by strike or walkout compel the cessation of its business with the plaintiff. The unexpired agreement between the plaintiff and the Simon Shoe Company under which sales of wood heels were made by the plaintiff to that company was entered into before the agreement of April 9, 1934, between the defendant union and the Simon Shoe Company. The officers of the union, before the execution of the agreement of April 9, 1934, and ever since up to the time the Simon Shoe Company ceased to buy of the plaintiff, knew that the plaintiff was supplying all the wood heels used by that manufacturer under some arrangement although they did not know its details or its duration in time. The final essential findings of the master are to the effect that the members of the defendant "union are acting in concert to deprive the plaintiff of selling its goods to the Simon Shoe Company and that as a result of the action" of the defendant union the shoe company has ceased taking any more heels from the plaintiff; that the shoe company was satisfied to continue its business arrangements with the plaintiff and the plaintiff was satisfied to

continue selling heels to the shoe company, and "that these two concerns would still be operating under their oral agreement made early in 1934 but for the acts of the respondent union, which have caused this shoe company to breach its agreement with the plaintiff and to cease taking the plaintiff's goods."

On the facts, the plaintiff has suffered a wrong and appears to be entitled to some relief. The plaintiff had a contract for the manufacture and sale to the Simon Shoe Company of a certain number of cases of shoe heels. That contract had not expired when the contract of April 9, 1934, between the defendant union and the Simon Shoe Company was made. It was in force in July, 1934, when the coercive force of the defendant union was put forth which caused that "shoe company to breach its agreement with the plaintiff and to cease taking the plaintiff's goods." The agreement of April 9, 1934, between the defendant union and the Simon Shoe Company, having been made voluntarily, was legal between the parties. *Hoban* v. *Dempsey*, 217 Mass. 166, 169. *Shinsky* v. *O'Neil*, 232 Mass. 99, 102. *Pickett* v. *Walsh*, 192 Mass. 572, 584. That agreement, however, does not justify the defendants in putting forth their power to compel the Simon Shoe Company to break its existing contract with the plaintiff by ceasing to do business with the plaintiff. This point is explicitly covered by the decision in *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45. One question involved in that case was whether a strike was lawful to enforce an agreement made by an employer with a union to furnish its employees with union made materials by compelling the employer to break an existing contract for the purchase of material not made by the union. It was not expressly found as a fact in that case that such agreement between the employer and the union was entered into voluntarily, but for the purposes of that decision it was assumed that such agreement was entered into voluntarily. It was decided (at pages 66, 67) that "it is clear that such an agreement could not affect existing contracts for the purchase of nonunion made material," and that "the rights to which the plaintiffs

[seeking to uphold existing contracts for the purchase of nonunion made material against a strike by the union] were entitled under the decisions previously cited, could not thereby be destroyed." The decisions there previously cited include *Berry* v. *Donovan*, 188 Mass. 353; *Pickett* v. *Walsh*, 192 Mass. 572; *Beekman* v. *Marsters*, 195 Mass. 205; *Burnham* v. *Dowd*, 217 Mass. 351; *New England Cement Gun Co.* v. *McGivern*, 218 Mass. 198, and *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 389. See, also, *Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263. In *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, a strike to compel the breaking of such existing contracts by refraining from buying nonunion made material was held to be illegal and was enjoined. That decision is authoritative in favor of the plaintiff with respect to its contract with the Simon Shoe Company.

It is recited in the master's report that the plaintiff in open court waived any claim for damages against the defendant union. That cannot rightly be construed as waiver of right to strictly equitable relief. The breaking of its contract with the plaintiff by the Simon Shoe Company affected not only the plaintiff but its employees; it may have injured the plaintiff in other ways. The contract between the plaintiff and the Simon Shoe Company made in the early part of 1934 was to continue for six months. Because of the interruption caused by the strike, the Simon Shoe Company at the expiration of that six months had not taken as many heels as it had agreed to buy of the plaintiff. Thereafter, it was agreed that the plaintiff should continue under the oral agreement until it had manufactured and delivered to the Simon Shoe Company the total number of cases agreed upon earlier in the year. It was a mere extension as to time of performance of the original oral agreement. This appears to have been a reasonable arrangement in view of unforeseen interferences with the original agreement and was not designed to circumvent the agreement of April 9, 1934. It is not found by the master to be tainted with illegality. It stands with reference to the rights of the plaintiff on the same footing as

the original contract.   It was not limited as to time.   No ground is disclosed on the record why it should not be completed now.   There is nothing in the record to justify the inference that the right of the plaintiff to complete its contract with the Simon Shoe Company was not valuable to it.   The plaintiff has established that a wrong has been done it by the defendant union.   "Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character."   Art. 11 of the Declaration of Rights of the Constitution.   The time for affording relief seemingly has not gone by, as in cases like *Brown* v. *City Council of Cambridge*, 289 Mass. 333, and *Blume* v. *William Shenkel & Sons Co.* 266 Mass. 15.

It does not appear that the right of the plaintiff which has been violated is so trivial or insubstantial as not to be proper for injunctive relief.   The rule of cases like *A. Doykos & T. Pappas, Inc.* v. *Leventhal*, 290 Mass. 375, is not applicable.   While there is a certain element of discretion in according injunctive relief, that principle cannot be invoked to support a decree dismissing a suit in equity where a contractual right of the plaintiff has been invaded and the only relief available is by way of injunction.

The contention of the defendant union that the action of the plaintiff in coöperating with its employees to form a company union, when it knew that the defendant union would not recognize wood heels made by such union as union made under the agreement of April 9, 1934, was so reprehensible as to bar relief in equity, cannot be supported.   The doctrine that equity will not aid one guilty of illegal or inequitable conduct in the matter with regard to which relief is sought is well recognized.   *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482.   *New England Wood Heel Co.* v. *Nolan*, 268 Mass. 191, 197.   *Taylor* v. *Ashe*, 284 Mass. 182, 188.   The conduct of the plaintiff does not fall under the condemnation of that doctrine.   The company union is found to have been formed in good faith.   If the claim of the plaintiff was unsound that its products were union made, such as the

Simon Shoe Company could buy and use under its agreement of April 9, 1934, that claim did not mislead the defendant union and on the facts found involved no moral turpitude.

The decree dismissing the bill is reversed and a decree with costs is to be entered in favor of the plaintiff with respect to its contract made early in 1934 with the Simon Shoe Company and to its extension.

*Ordered accordingly.*