THE YANKEE NETWORK, INC. *vs.* GEORGE GIBBS & others.

Suffolk. February 7, 1936. — July 1, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Unlawful Interference. Labor Union. Equity Pleading and Practice,* Decree.

That the organizer and conductor of an orchestra, in violation of a by-law of a national federation of musicians of which he was a member, prohibiting him at that time from entering upon a permanent engagement without the consent of the local union, had made with a broadcasting company a contract without such consent which also violated a by-law of both the federation and of the local union, of which the players in the orchestra were members, in not including a stipulation to the effect that nothing therein should be construed to interfere with any obligation owed by members to the federation, did not render lawful a combination by officers of the local union, having no trade dispute of any kind with the broadcasting company, to prevent the carrying out of the contract and to force the broadcasting company to replace the conductor with another, by inciting a strike of the players and by threats of fines against them and by the imposition of fines upon the conductor; and in a suit by the broadcasting company it was proper to enjoin such acts and also any other means of carrying out the purpose of such combination which there was reason to apprehend would be employed.

BILL IN EQUITY, filed in the Superior Court on April 8, 1935.

The suit was heard by *Macleod,* J., by whose order a final decree was entered enjoining the "officials of Local 9" "from intimidating or coercing by the imposition of a fine, suspension or expulsion, or threat of fine, suspension or expulsion of any of its members, including Sully James Kendis, and such musicians as he has selected or may

hereafter select or engage to perform services at the broadcasting studios of the plaintiff from playing or rendering services at the broadcasting studios of the plaintiff. . . . from doing any act or taking any action to interfere with any members of Local 9 who desire to play at the broadcasting studios of the plaintiff in conjunction with or under the leadership of the said Sully James Kendis. . . . from in any way interfering with the performance by Sully James Kendis of the terms of the contract between said Kendis and the plaintiff, . . . from interfering in any way with the employment by the plaintiff of Sully James Kendis and such musicians as he may select to play in an orchestra at the broadcasting studios of the plaintiff."

The defendants appealed.

The case was submitted on briefs.

*W. J. Day*, for the defendants.

*G. Alpert & J. A. Farrer*, for the plaintiff.

QUA, J. The plaintiff operates a chain of broadcasting stations. The defendants are the officers and members of "Local No. 9," which is located in Boston and is affiliated with and forms part of the American Federation of Musicians. The primary purpose of the suit is to restrain the defendants from interfering with the conducting of an orchestra by one Kendis in the plaintiff's studio.

For about eighteen months prior to April 1, 1935, the officials of the local had been endeavoring to induce the plaintiff to employ a "house orchestra," so called, but the plaintiff had refused to do so, because it was unable to find a conductor of suitable talent. Shortly before April 1 the plaintiff requested Kendis to get together an orchestra of ten musicians, which he did by selecting ten members of the local. Their work proved satisfactory to the plaintiff, and thereupon, on April 1, the plaintiff and Kendis entered into a contract in writing by which the plaintiff engaged Kendis for one year as "contractor, conductor, arranger and pianist" at a salary of $100 per week. Kendis was a member of the American Federation of Musicians, belonging to locals in New York City and elsewhere, but not to Local 9. A by-law of the federation provided that "A member

who has his transfer card on deposit in a Local is not entitled, without the consent of the Local, to solicit, accept or play any permanent engagement during a period of three months after the date of deposit, but otherwise is entitled to all the privileges of the Local," with exceptions not here material. Another by-law common to both the federation and the local required members to include in their contracts with employers a stipulation to the effect that nothing in the contract should be construed to interfere with any obligation which they owed to the federation as members thereof. A so called "Price List" of the local contained a regulation requiring members playing exclusively for broadcasting "to file contracts with the Secretary prior to the engagement." Kendis, upon coming to Boston, deposited his transfer card with Local 9, but he did not obtain the consent of that local before accepting and executing his contract with the plaintiff. The stipulation required by the by-law was not included in that contract. It did not appear that he was "playing exclusively for Radio broadcasting," so as to bring him within the regulation. On April 1, after signing the contract, Kendis submitted it to the officials of Local 9 for approval. On April 3 the executive committee voted to refuse permission to Kendis to accept the contract, and on April 8 he was officially notified that fines aggregating $500 had been imposed upon him for violation of the by-laws and of the regulation hereinbefore mentioned. On the same day the orchestra ceased to play. Up to this point there is little, if any, dispute as to the facts.

The judge found that Kendis had not violated any of the by-laws or regulations of the federation or of Local 9. He further found that the ten musicians employed by Kendis desired to continue to play at the plaintiff's studio, "that they were entirely satisfied with the compensation and the conditions of their employment, and that the only reason they did not continue to play was because as the result of the threats made to them by the officials of the Union they feared substantial fines, suspension or expulsion," that "there was no legitimate or reasonable basis for refusing the permission to Kendis to carry out his contract with

the plaintiff," and that suspension or expulsion of the ten musicians would be arbitrary, unreasonable and illegal. Upon the facts found by him and upon "all the evidence" he found and ruled "that the conduct of the officials of the Union in interfering with the employment of Kendis and the members of his orchestra by the plaintiff constituted an impairment of the plaintiff's right to a free flow of labor, and that conduct was illegal, and in violation of the plaintiff's rights."

The case is here on appeal with a report of the evidence. We must examine the testimony and draw our own conclusions as to facts, giving due weight to the findings of the judge who saw and heard the witnesses and not reversing his findings either of subsidiary or of ultimate facts unless they are erroneous in law or the evidence shows them to be plainly wrong. *Cook* v. *Mosher*, 243 Mass. 149, 153. *New England Wood Heel Co.* v. *Nolan*, 268 Mass. 191. *Masterson* v. *American Employers' Ins. Co.* 288 Mass. 518, 521. *MacLeod* v. *Davis*, 290 Mass. 335, 338.

We think it is plain on evidence practically undisputed that Kendis had violated the two by-laws in question by accepting without the consent of the local and before the expiration of the three-months period a contract for a permanent engagement which did not contain the required stipulation. We deal with the case on this basis. The other findings of fact hereinbefore stated cannot be pronounced plainly wrong. They are consistent with inferences which a reasonable mind might draw from evidence which, as elicited from witnesses in the courtroom, might have been convincing. It is true that there was no direct evidence of "threats" by the officers of the local to the ten musicians, but there was evidence which could have been thought to show advice from the officers which caused the musicians to abandon their employment through fear of action by the officers and the local and against their own desire. The precise word used to describe this is unimportant.

The findings and the evidence together show that the defendants, having no trade dispute of any kind with the plaintiff, combined to prevent the carrying out of the con-

tract between the plaintiff and Kendis and to prevent Kendis from working for the plaintiff and that they succeeded in that purpose. Such a combination for such a purpose was *prima facie* unlawful both as an interference with the contractual right of the plaintiff and as an interference with the right of the plaintiff to manage its own business in its own way and to have free access to the market for musical talent. *Walker* v. *Cronin*, 107 Mass. 555. *Reynolds* v. *Davis*, 198 Mass. 294. *Burnham* v. *Dowd*, 217 Mass. 351. *W. A. Snow Iron Works, Inc.* v. *Chadwick*, 227 Mass. 382, 389. *Haverhill Strand Theatre, Inc.* v. *Gillen*, 229 Mass. 413. *Folsom Engraving Co.* v. *McNeil*, 235 Mass. 269. *Mechanics Foundry & Machine Co.* v. *Lynch*, 236 Mass. 504. *Rice, Barton & Fales Machine & Iron Foundry Co.* v. *Willard*, 242 Mass. 566, 572. *Moore Drop Forging Co.* v. *McCarthy*, 243 Mass. 554. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 56, 65. *Armstrong Cork & Insulation Co.* v. *Walsh*, 276 Mass. 263, 272. *Service Wood Heel Co. Inc.* v. *Mackesy*, 293 Mass. 183. The evidence fails to show justification for the defendants' conduct in the exercise by them of any right of free competition or of any other right of equal dignity with the rights of the plaintiff. *Plant* v. *Woods*, 176 Mass. 492. *Berry* v. *Donovan*, 188 Mass. 353. *Folsom* v. *Lewis*, 208 Mass. 336. *Haverhill Strand Theatre, Inc.* v. *Gillen*, 229 Mass. 413.

The right of the local, solely as between itself and Kendis, to punish Kendis for violation of the by-laws is not here involved. Whatever may be the extent of that right, it cannot be used as a justification for an otherwise unlawful attack upon the plaintiff. Indeed it was held after much consideration in *Martell* v. *White*, 185 Mass. 255, and in *L. D. Willcutt & Sons Co.* v. *Driscoll*, 200 Mass. 110, that the imposition of coercive fines was in itself an unlawful means of carrying on even a lawful combination. *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 72. See G. L. (Ter. Ed.) c. 180, § 19. And in this case the abrupt change of attitude on the part of the local toward the new orchestra when Kendis was mentioned as the conductor, the close relationship between the refusal to approve Kendis's con-

tract and the calling out (as the judge found) of the ten musicians and the imposition of the heavy fines, together with much other evidence in the case, would justify a conclusion that the fines were not being employed solely to punish Kendis for his past infractions of the by-laws, but that they were being employed in part at least as one of the means of carrying out the defendants' then present unlawful purpose of breaking up Kendis's connection with the plaintiff in the hope ultimately of forcing the plaintiff to employ in his place some member of the local who had not come in from another city. See *DeMinico* v. *Craig*, 207 Mass. 593; *A. T. Stearns Lumber Co.* v. *Howlett*, 260 Mass. 45, 70.

No prejudicial error appears in the manner in which the judge dealt with questions of evidence.

We think the final decree was no broader in its terms than was reasonably required for the protection of the plaintiff's rights. As the purpose of the combination must now be deemed to have been unlawful, it was proper to enjoin all means of carrying it out which there was reason to apprehend would be employed, including suspension or expulsion from the local as well as fines. In this respect the case differs from *L. D. Willcutt & Sons Co.* v. *Driscoll*, where the issue was only as to the lawfulness of the means. This point is conceded by the minority opinion in that case at page 137. The decree must be interpreted reasonably in the light of the pleadings and with reference to the nature of the wrong for which relief is granted. *Attorney General* v. *New York, New Haven & Hartford Railroad*, 201 Mass. 370, 372. It does not purport to regulate the relations of the local with its members, except as they are involved in the combination against the plaintiff which is the subject of the suit. Inasmuch, however, as the one-year term of the contract annexed to the bill has now expired, the third paragraph of the final decree should be omitted. As so modified, the decree is affirmed with costs.

*Ordered accordingly.*