[Civil No. 4531. Filed September 25, 1944.]

[151 Pac. (2d) 705.]

CANDIDO D. CORPUZ, JOSEPHINE VAN BOVEN, NORRIS FOLI, FRANK KENNEDY, CHARLES WADE, BILL McGLOCKLIN, SCOTTY OBY, JAMES KORONIKOLOS, VIRGIL RICHEY, NICK BALAGAT, MARY DeVANEY, LILLIAN O'NEILL, A. B. GASTON, ALBERTA BIGENIS, JANET HINTON, GRACE BIRD, ROSE HELF and HANE KINZLE, Appellants, v. HOTEL AND RESTAURANT EMPLOYEES' INTERNATIONAL ALLIANCE AND BARTENDERS' INTERNATIONAL LEAGUE OF AMERICA LOCAL No. 631, a Voluntary Association of Workmen, and D. A. BALDWIN, for Himself and on Behalf of the Members of Hotel and Restaurant Employees' International Alliance of Bartenders' International League of America, Local Union No. 631, Appellees.

484

Messrs. Jennings & Salmon, and Mr. Ozell M. Trask, for Appellants.

Mr. Geo. T. Wilson, and Messrs. Minne & Sorenson, for Appellees.

STANFORD, J.—Local Union No. 631, claiming it has an agreement with the Westward Ho Hotel Company in which the latter agreed and bound itself on January 2, 1942 to employ and retain only members of the union in good standing, brought this action to enjoin the hotel company from violating its agreement by employing nonunion members in carrying on its business.

The hotel company admits in its answer the contract, but states that the union's agent D. A. Baldwin, at the time of its execution, represented to the hotel company that ninety-five per cent of its employees were members or desirous of becoming members of the union, and that all employees of defendant would immediately become members upon the execution of the agreement; that the hotel company believed said representations and relied thereon, and accordingly executed the agreement; that the representations were false and untrue to Baldwin's knowledge, and were made to deceive the hotel company and to induce it to execute the agreement.

Another reason for executing the agreement, the hotel company alleges, was a threat of the said Baldwin to call a strike of all of the hotel employees if it failed to execute the agreement.

After hearing the evidence on the issues thus formed the trial court entered its order enjoining the hotel company *pendente lite* from continuing in its employ any persons not members of the union, provided that not more than ten should be discharged each week until all nonunion members had been dis-

charged and replaced by union members. It was further provided that all employees who should make application within one week to join the union whether accepted or rejected, should be exempt from the order.

Following the issuance of the order to show cause on March 28, 1942, and before the hearing thereon, the intervenors herein on April 2, 1942, moved the court for leave to intervene as parties defendant and they are the appellants on appeal.

The first assignment is that the court erred in enjoining defendant and intervenors (certain employees of the hotel company) from violating the contract of January 2, 1942, for the reason that this contract was secured by means of false representations, and for that reason the plaintiffs do not come before the court with clean hands. They also contend that the said contract has for its purpose the destruction of the individual right to work without joining a union and is therefore against public policy. It is also contended by defendant that the enforcement of the agreement by the hotel company to employ only members of the union is an actionable tort.

We will consider assignment number one. The evidence concerning the agreement to employ only union men is not in conflict. It appears therefrom that one of the agents for the hotel company and the managing director thereof and Baldwin, the agent of the union, in meetings discussed the union's demand that only members be employed by the hotel company several times prior to the execution of the agreement. The strongest statement testified to by the witnesses for the hotel company is "He stated that he and Mr. Holahan . . . in conversations with me stated on many occasions that they, meaning Mr. Baldwin as the representative, represented 95% or better of the employees who were members of the

union or who desired to become members." The witnesses testified that it was on such representation that they were induced to sign the agreement.

It should be remembered that these employees were the employees of the hotel company. It appears to us that the representatives of the hotel company could easily have ascertained whether that statement was true simply by making inquiry of its employees. The contention that the hotel company relied upon this representation and accepted it as true, in view of the surrounding circumstances, requires a higher degree of credulity than we possess. The means of determining the truth of such representation were easily accessible to the hotel company and its officers. They knew, or could have found out, by simple inquiry from the hotel employees as to whether they had joined the union or intended to do so or not. The claim that the execution of the agreement was obtained through false representations is not supported by the evidence.

Negotiations for signing this contract were started the middle of November, 1941, and the contract was finally executed February 2, 1942.

It is a fact disclosed by the evidence that the total number of employees of the hotel company was from 150 to 175, and it is also true that only about 20 or 30 were members of the union at that time, but these facts were as well known by the hotel company as by the representative of the union, or should have been. The evidence conclusively shows that the contract by the hotel company to employ union men only was voluntarily entered into by the hotel company, with a full knowledge of the facts, and that the contention now made is an after-thought.

An employer who voluntarily enters into an agreement with a labor union to employ union workers only in his business may be enjoined from violat-

ing his agreement by employing nonunion workers when union workers are available.

■ As we take up the other assignments of the appellants, we find the contention that Section 26–109, Arizona Code Annotated 1939, is designed to prohibit an injunction in such a case as the instant one because it involves labor controversies. Said section reads, in part, as follows:

"No restraining order or injunction shall be granted in any case between employer and employee, or between employees, or between persons employed and persons seeking employment, involving or growing out of a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property or to a property right. . . ."

Also appellants submit Section 43–1608, Arizona Code Annotated 1939, which reads as follows:

"*Coercing persons not to join labor organizations.* —Any person who shall coerce or compel any other person to enter into an agreement, either written or verbal, not to join or become a member of any labor organization, as a condition of such other person securing employment or continuing in the employment of any such person shall be guilty of a misdemeanor."

We find no application of these two sections to the case before us.

We believe the case of appellants rests on the first assignment of error and shall give but brief attention to the other assignments.

The case of *Schwab* v. *Moving Picture Machine Operators Local, 1941,* 165 Or. 602, 109 P. (2d) 600, submitted by appellants is where the object of the union activity is principally directed to securing a monopoly of jobs available to the members of the union, such activity is not within the scope of the

union's legal rights. In that case the defendant union picketed the plaintiff's theatre in order to compel the discharge of non-union operators. When an injunction was issued restraining the picketing the union asserted the anti-injunction statute. We consider this case entirely different as shown by the foregoing pages. The appellants also submit the case of Service Wood Heel Company v. Mackesy, 293 Mass. 183, 199 N. E. 400, and many other cases.

■ The legality and enforcement of the contract as to nonunion employees of the hotel is the main issue set forth in these two assignments and we believe that such a contract is not violative of any law of our state.

■■ We believe the following two cases are determinative of the law on the subject involved in this action and we quote from the case of *McKay* v. *Retail Automobile Salesmen's Local Union No. 1067*, 16 Cal. (2d) 311, 106 Pac. (2d) 373, 375, rendered in 1940, as follows:

"The question presented for determination in this case concerns the right of labor to picket an employer's place of business. The controversy arose over a demand upon the employer to sign a contract with a union.

.    .    .    .    .    .    .    .    .    .

"It is the well-established law of this state that members of a union or group of affiliated unions are privileged to refuse to work in the same shop or on the same job with other workmen irrespective of whether the latter have united or organized themselves into a separate trade union. And competition for work being an entirely lawful activity, whether the competing groups be unions or unions and individuals, a court of equity may not interfere by restraining the use of any lawful form of concerted action used in the struggle. (Citing case.) The principle that a closed union shop is a proper object of concerted action by employees has been widely recog-

nized in other jurisdictions (Citing cases) and has been adopted by the American Law Institute in its Restatement of the Law of Torts, vol. 4, § 788.

"To the contrary, many courts in other jurisdictions have decided that the forcing of such a choice upon employees by labor unions is itself an unlawful interference with the 'absolute, inherent and indefeasible right' of the individual employee to work under such conditions as he may choose. But the Supreme Court of the United States holds that there is no constitutional right inhering in individuals to work as nonunion employees. *Senn* v. *Tile Layers Protective Union,* 301 U. S. 468, 57 Sup. Ct. 857, 81 L. Ed. 1229. And the law of California as stated in *Parkinson Co.* v. *Building Trades Council, supra* [154 Cal. 581, 98 Pac. 1027, 21 L. R. A. (N. S.) 550, 16 Ann. Cas. 1165], is that the members of a labor union are privileged to bring such lawful pressure to bear, as is within their control, in order to induce nonunion employees to join their union. The defendant unions and their officers contend that the facts of that case are exactly the same in principle as those alleged in the plaintiffs' complaint, and that the conclusion there reached is determinative of the present controversy.

"In the Parkinson case, the plaintiff, which was the employer, maintained a lumber yard, mill and plumbing and tinning shop and employed a nonunion tinner. Its other employees, who belonged to several affiliated unions of the American Federation of Labor, demanded that the tinner be compelled to join the Tinner's Union or be discharged. Both the tinner and the employer refused to accede to the unions' demands, with the result that the community labor council called a strike and secondary boycott against the employer. 'Unfair notices' were sent to contractors and other customers of the employer, which according to union rules precluded the employees of these customers from working on or with materials furnished by the employer.

"The resulting strike and boycott were conducted peaceably, and with minor exceptions, no threats of force or harm to anyone. A short time after the

strike, the employer was able to secure nonunion men and resume operation of its plant, but the secondary boycott against its customers was continued in force by the unions. The employer brought suit against them for injunctive relief and damages, and after a trial the superior court issued a permanent injunction broadly restraining the defendants from interfering with its business.

"Upon appeal this court reversed the judgment and held, six justices concurring in three separate opinions and one justice dissenting, that the plaintiff was not entitled to relief. All of the members of the court agreed, however, that the attempt by the defendants to secure a closed union shop was a legitimate object of collective action and the right of workingmen to combine in order to better the terms and conditions of their employment was fully recognized. Such combination was found to be the 'necessary and desirable counterpart' of business combinations in order to enable workmen to compete in a 'fair and equal way' in the struggle for existence. . . . "

We quote also from the case of *Williams et al.* v. *Quill et al.*, 277 N. Y. 1, 12 N. E. (2d) 547, 549:

"In 1927, this court, in *Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, at page 263, 157 N. E. 130, 132, stated in the prevailing opinion: 'The purpose of a labor union to improve the conditions under which its members do their work; to increase their wages; to assist them in other ways, may justify what would otherwise be a wrong. So would an effort to increase its numbers and to unionize an entire trade or business. It may be as interested in the wages of those not members, or in the conditions under which they work as in its own members because of the influence of one upon the other. All engaged in a trade are affected by the prevailing rate of wages. All, by the principle of collective bargaining. Economic organization to-day is not based on the single shop. Unions believe that wages may be increased, collective bargaining maintained only if

492

union conditions prevail, not in some single factory, but generally. That they may prevail, it may call a strike and picket the premises of an employer with the intent of inducing him to employ only union labor. And it may adopt either method separately. Picketing without a strike is no more unlawful than a strike without picketing. Both are based upon a lawful purpose. Resulting injury is incidental and must be endured.'

"This case has become the law of this state and has been followed in other instances. Therefore, we approach this case in the light of the law as it was before Section 704 of the Labor Law was adopted, and we find that a labor organization is permitted to combine and to strike in a particular industry for the purpose of obtaining employment for its own people, even to the extent of excluding others from the entire industry who are not union men. The one reservation in this law is that the attempt to accomplish the end shall be carried out in good faith and for the declared purposes, and not through malice or ill will, or a desire to injure nonunion employees, or simply and solely for the purpose of keeping them out of work.

"If all this be lawful, what is there unlawful in negotiating with an employer to accomplish through peaceful negotiations that which the law permits to be done through strikes, which lead so frequently to disruption of business and violence? If the railroads in this instance, acting upon their own initiative, determined to dispense with the services of nonunion men, I know of nothing in the law which would prevent them from doing so; or, to put it in a different way, if the defendant employers should come to their decision that, for the good of their enterprises, they would thereafter only employ union men, I do not see how the law could prevent them from doing so, or from discharging the plaintiffs and their nonunion employees. It might be an unpleasant situation for all, but, nevertheless, one with which the law could not interfere. Recognizing this, I take it that it would not be unlawful because such a determination had been arrived at by the solicitation or request of the

unions or labor organizations. And then, to go one step further, why would it become illegal if the arrangements and determination were embodied in a contract or a written agreement with the labor organization? . . . "

It is our opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

McALISTER, C. J., and ROSS, J., concur.