Cowdrey, P.J.
This is an action in tort in which the plaintiff alleges that her *59 failure to be hired for the position of Director of Research, Evaluation and Planning at the Eliot Community Mental Health Center, Inc. was proximately caused by the illegal action of the defendants. The plaintiff s complaint is in four counts, three of which charge both defendants with: procuring a refusal to contract; intentional interference with a contractural relationship and intentional interference with an advantageous relationship. Count 4 of the plaintiff s complaint is against defendant Leslie G. Brody alone for the infliction of distress.
Defendant Brody’s answer denied that the plaintiff enjoyed either an existing o.r probable future business relationship; denied that he intentionally inflicted emotional distress upon the plaintiff; and asserted that his actions were within the scope of his supervisory employment authority and were thus privileged. The answer submitted by defendant Betty-Jane Scheff also denied the existence of both the actual and probable future business relationship claimed by the plaintiff; and asserted that her actions were privileged because they were performed within the scope of her employment authority and were based on lawful competition for employment.
The defendants filed a Dist./Mun. Cts. R. Civ. P., Rule 56 motion for summary judgment which was supported by affidavits of both defendants; portions of depositions of the plaintiff and both defendants; and related exhibits. The plaintiff thereafter submitted a memorandum of law in opposition to the defendants' Rule 56 motion. In substantiation thereof, the plaintiff provided various exhibits, affidavits and depositions.
The defendants’ Rule 56 motion for summaryjudgment was heard on April 15, 1981, and allowed as to both defendants on all complaint counts on May 26,1981. The plaintiff subsequently claimed a report to this Division on a charge of error in trial court’s entry of summary judgment for the defendants.
The sole issue framed by the trial court and expressly posited for review in the report sub judice is as follows:
“Is there any genuine issue as to any material fact as to any of the causes of action properly pleaded in the plaintiffs complaint, and, if not, whether the defendants are entitled to judgment as a matter of law.’’
The record before us on this appeal is comprised of approximately four hundred pages of pleadings, affidavits, depositions, memoranda and exhibts. Considerations of time, space and clarity preclude a detailed narration of the various statements and allegations contained therein. We discern no material, factual dispute, however, as to the fundamental employment situation from which this case has evolved.
Plaintiff Annamarie Hayes (hereinafter Hayes) was employed for several years by Emerson Hospital, Concord, Massachusetts as a Program Evaluator for the Concord Area Mental Health Center (hereinafter the Center). The Center may be described as a cooperative program for the provision of community mental health services to northwestern Middlesex County towns which was developed and undertaken in 1967 by three separate charitable organizations; namely, Emerson Hospital (hereinafter Emerson); Walden Guidance Center, Inc. (hereinafter Walden) and the Mental Health Association of Central Middlesex, Inc. (hereinafter the Association). A Trust Agreement, which apparently codified the ongoing interaction of these groups, was executed by all three corporations in June, 1976. The agreement designated Emerson as the grantee for National Institute of Mental Health (NIMH) regional grants and described Walden and the Association as Emersons’ “primary affiliates.” The Emerson Board of Directors retained responsibility for compliance with the terms of all *60 federal grants, but delegated authority for the “planning, coordination and evaluation” of services to a Center Board of Trustees composed of Directors of all three corporations.
The trust agreement provided for the administration of the Center by employees of Emerson; and for the selection and employment by Emerson of a Center Director charged, inter alia, with the “provision of statistical information for determining needs, planning services, maintaining staff and program activity and evaluating the attainment of objectives.” As a Center program evaluator, Hayes served under Center Director Robert Andrews as the Assistant Director for Program Evaluation and Development. Section 2.21 of the trust agreement states:
"the Trustees shall encourage cooperation and uniformity of treatment of agency employees, whether or not they are rendering the Services covered by this Agreement, but shall neither assume nor exercise any responsibility over the internal operations of any party to this agreement.”
In August, 1978, a Center Reorganizational Task Force, appointed by the Center Trustees, recommended that Walden should contemplate a corporate restructuring to function as an autonomous community mental health unit which could directly provide many of the services then extended to the towns by Emerson and the Center. In accordance with this recommendation, the trust agreement and the Center Board of Trustees were legally dissolved on June 1, 1979. Effective the same date, Walden, which was subsequently reorganized and renamed the Eliot Community Mental Health Center (hereinafter Eliot), became the regional mental health center designee for the Concord, Massachusetts area of the NIMH. The Center, therefore, ceased to exist on June 1, 1979.
Defendant Leslie G. Brody (hereinafter Brody), who had served as the Chief Executive Officer of Walden, became the Executive Director of Walden (later Eliot) on June 1, 1979. As Walden no longer served as a subcontractor of Emerson, Brody became responsible for the management of federal grant monies now channelled directly through Eliot. Brody was also unilaterally empowered to select and hire Eliot staff employees.
On April 27, 1979, plaintiff Hayes received a letter from the Director of Personnel of Emerson Hospital which stated, in relevant part:
Effective June 1, 1979, there will be a restructuring of the Walden Guidance Association to include the Mental Health Center, which is currently a department of Emerson Hospital.
As a result of this transfer of responsibility, you will no longer be an employee of Emerson Hospital after May 31, 1979.
Hayes had apparently been aware of the impending termination of the Center and had submitted an application to Walden for the position of Director of Research, Evaluation and Planning. Defendant Betty-Jane Scheff (hereinafter Scheff), who had served as Program Coordinator for the Walden day care center, was chosen and hired by defendant Brody for the position sought by Hayes. The instant suit was instituted by the plaintiff in response to this employment decision.
1. The record before us presents no factual dispute on any material issue relevent to defendant Scheff s conduct. Stated alternatively, the plaintiff has failed to present sufficient facts to constitute any cause of action against Scheff, even if we were to accept as true all of the plaintiff’s allegations.
Hayes asserts that Scheff s application for, and appointment to, the Eliot position in question constituted a tortious interference with the plaintiffs contractual and advantageous relationships. Scheff s endeavors to secure the em *61 ployment at issue constituted, however, a justified exercise of her right of free competition, a right equal in dignity to that of the plaintiff to be free from contractual interference. See Saveall v. Demers, 322 Mass. 70, 73 (1947); The Yankee Network, Inc. v. Gibbs, 295 Mass. 56, 60 (1936) and cases cited.
Further, the plaintiff has advanced no evidence which would sustain a finding or even raise an issue as to a vitiation of Scheff's privilege by her express malice or utilization of unlawful means to obtain employment. See, generally, as to express malice, Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 343-344 (1943); and as to unlawful means, Godin v. Niebuhr, 236 Mass. 350, 351 (1920); Martell v. White, 185 Mass. 255, 261 (1904). Hayes attempts to characterize as tortious Scheff s statement of interest in, and discussions of, the director position with Brody; Scheff s participation in a doctoral program for mental health professionals; and both Scheff s alleged recommendation of such graduate program to Brody and alleged offers to assist him with his studies. Such alleged behavior, even if believed to have occurred, cannot as a matter of law be deemed a utilization of unlawful methods to secure employment. The plaintiff expressly testified by way of deposition that Scheff never did or said anything that could be considered malicious, or designed by Scheff to injure the plainiff.
The trial court’s entry of summary judgment for defendant Scheff on all counts is hereby sustained.
.2. The trial court’s Rule 56 finding for defendant Brody on count 2 of Hayes' complaint for interference with a contractual relationship was required as a matter of law. The plaintiff has admitted that she had neither a written contract with, nor even an oral offer of employment from, any Eliot director or representative; that she had nothing in writing to indicate that Eliot even contemplated contracting with her; and that up to and including May 31, 1979, she had never been employed by either Eliot or defendant Brody. The tort of interference with a contractual relationship requires evidence of the existence of a contract. Telephone Answering Serv. v. New England Tel. & Tel., 358 Mass. 822, 822-823 (1971); McGurk v. Cronenwett, 199 Mass. 457, 461; Beckman v. Marsters, 195 Mass. 205, 211-212 (1907).
Similarly, no evidence which even inferentially raises an issue as to Brody’s interference with Hayes’ contract of employment with Emerson has been advanced. It is clear that Hayes’ termination from Emerson as a Center employee resulted solely from the termination of the Center itself. The record is devoid of any suggestion that Brody was even remotely involved with such termination. Absent evidence of causation herein, Brody could not be held liable for interference with Hayes’ Emerson employment contract. Herbits v. Constitution Indem. Co., 279 Mass. 539, 542 (1932); Berry v. Donovan, 188 Mass. 353, 356 (1905); National Right to Life Convention 76, Inc. v. Million Dollar Round Table, 6 Mass. App. Ct. 857 (1978).
3. Defendant Brody could not logically have been found culpable of “procuring" per se a refusal to contract under count 1 of the plaintiff s complaint. An essential element of said tort is an inducement brought to bear upon a third person. Vigoda v. Barton, 338 Mass. 302, 304 (1959). Defendant Brody not only enjoyed exclusive authority to select and hire Eliot personnel, but also unilaterally elected to reject Hayes’ employment application. Brody thus exerted no pressure or influence on a “third party” in derogation of the plaintiffs rights.
4. If, as the plaintiff contends, the Eliot Community Mental Health Center, Inc. (or its predecessor corporation, Walden) can be deemed the requisite third party herein, then count 1 for procuring a refusal to contract is the practical equivalent in this case of count 3 of the plaintiffs complaint for Brody’s alleged interference with the plaintiff s advantageous relationships. We proceed with an *62 examination of the latter claim.
The elements of the tort of interference with an advantageous relationship are:
(1) a business relationship or contemplated contract of economic benefit; (2) the defendant’s knowledge of such relationship; (3) the defendant’s intentional and malicious interference with it; (4) the plaintiffs loss of advantage directly resulting from the defendant’s conduct.
Comey v. Hill, 387 Mass. 11, 19 (1982) and cases cited. Initially prerequisite to recovery is evidence of the existence of a legally protected interest in the form of a relationship economically beneficial to the plaintiff. Ross v. Wright, 286 Mass. 269, 271 (1934). The spectrum of protected interests ranges from those created by an existing contract, Ibid, or existing relationship not founded on contract, Walsh v. O'Neill, 350 Mass. 586, 589-590 (1966); to those inherent in prospective contractual relations, Chemawa Country Golf, Inc, v. Wnuk, 9 Mass. App. Ct. 506, 510 (1980); or merely “probable future business relationships from which there is a reasonable expectancy of financial benefit.” Owen v. Williams, 322 Mass. 356, 362 (1948). The plaintiff has failed to advance any evidence of the existence of such a legally protected interest.
It is established that interference with mere negotiations for business dealings are not actionable. Diener v. Weiss, 350 Mass. 782 (1966). The plaintiffs purported relationship with Eliot, with which Brody allegedly interfered, did not even reach the negotiation level. As noted above, Hayes has expressly admitted that the Emerson Center ceased to exist on June 1, 1979; that she was never offered the director position at issue by anyone at Eliot and that there was no written evidence that Eliot even contemplated her employment. Rather, the plaintiff endeavors to construct a “probable future business relationship” with Eliot on the basis of a recommendation by Center Trustees that Hayes “be considered” by Eliot forthe positon at issue; on the plaintiff s perception that all Center personnel “assumed” she would be hired by Eliot; and on the plaintiffs subjective evaluation that no one else was as interested in, or as qualified for, the position as she.
The “possibility” of the acceptance of an employment application, however supported by the favorable recommendations and good wishes of one’s associates, is not the equivalent of the existence of a “probable” business relationship between the applicant and an independent hiring entity. The plaintiff s optimistic expectations of future employment with Eliot cannot be deemed legally synonymous with the actual existence of a reasonable expectancy of financial benefit to be derived from an existing relationship with Eliot.
The plaintiff s efforts to discover or create material issues of fact so as to avoid the operation of a Rule 56 summary judgment herein are unpersuasive. Hayes’ assertions, including her self-description as a Center or Emerson employee and her belief that her termination from Emerson by letter dated April 27, 1979 was a simple accounting step, are not sufficient to raise a genuine, triable issue of fact as to whether Eliot wa an independent, corporate entity or a simple continuation of the Center under a new name after June 1, 1979. The record is clear that Eliot (formerly Walden) is a separate corporation from Emerson which, prior to June 1, 1979, simply subcontracted with Emerson to provide mental health services. Eliot remained independent of any control by Emerson of its internal operations pursuant to paragraph 2.21 of the trust agreement. Conversely, the Center was an administrative unit of Emerson, employed by Emerson, to manage federal grant funds paid to Emerson. As Eliot became the NIMH designee on June 1, 1979, Emerson no longer required an administrative unit and the Center ceased to exist, as the plaintiff has admitted. Rule 56 does not require a trial on the *63 merits simply to remedy the plaintiff s confusion as to the legal significance of this progression of events. Such confusion does not alone present a genuine issue of material fact.
The plaintiff has failed to advance sufficient evidence to establish, orto raise a genuine issue as to, the possibility of her enjoyment of a legally protected business interest with which Brody could have tortiously interfered by simply refusing to hire her. Defendant Brody was thus entitled as a matter of law to the Rule 56 summary judgment entered in his favor by the lower court on count 3 of the plaintiff s complaint.
5. Finally, having viewed the evidence in the light most favorable to the plaintiff, Lewis v. Antelman, Mass. App. Ct. Adv. Sh. (1980) 1345; Davidson v. Commonwealth, 8 Mass. App. Ct. 541, 545 (1979), we conclude that summary judgment was properly entered for defendant Brody on count 4 of the plaintiff s complaint for intentional infliction of emotional distress.
The allegations advanced by Hayes as to Brody’s post-June 1, 1979 actions, whether viewed simply as isolated incidents or collectively as indicative of a pattern of behaviour [see Simon v. Solomon, 385 Mass. 91, 97 (1982); Boyle v. Wenk, 378 Mass. 592, 595 (1979)], would not sustain a finding that Brody’s conduct was:
“so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."
Wolfberg v. Hunter, 385 Mass. 390, 395 (1982); George v. Jordan Marsh Co., 395 Mass. 244, 255 (1971). Placing as "harsh a face” on the actions of Brody as Hayes’ allegations would reasonably allow, Richey v. American Automobilie Assoc. Inc., Mass. Adv. Sh. (1980) 1425, 1429, we find no basis upon which reasonable people could differ as to the non-tortious character of Brody’s interacton with the plaintiff subsequent to June 1, 1979. See Boyle v. Wenk, supra at 597; Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1971).
It is unnecessary to review specifically the inadequacy of the plaintiffs evidence as to the remaining elements of the tort of intentional infliction of emotional distress. In general, the plaintiff s allegations are insufficient to raise a material issue of fact requiring a trial on the merits as to whether Brody, without privilege, and by extreme and outrageous conduct, intentionally or recklessly caused stress to Hayes so severe that “no reasonable man could be expected to endure it." Agis v. Howard Johnson Co., supra at 144-145.
6. The plainiff has failed to demonstrate the existence of a genuine issue of material fact requiring a trial on the merits of this case; and has advanced insufficient evidence to sustain a finding against the defendants. The defendants were thus entitled to a judgment in their favor as a matter of law.
Accordingly, we sustain the trial court's Dist./Mun. Cts. R. Civ. P., Rule 56 summary judgment for both defendants on all complaint counts. Community Nat’l Bk. v. Dawes, 369 Mass. 550, 554 (1976).
There being no error, the report is dismissed.