JOHN J. SULLIVAN *vs.* JAMES F. BURKE.

Plymouth.    February 4, 1941. — September 8, 1941.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

Contract, Construction, Of employment.  *Unlawful Interference.*  *Evidence*, Competency, Res gestae.  *Labor Union.*

Evidence at the trial of an action by a nonunion motion picture operator against a business agent of a labor union did not require a finding that it was an implied term of the plaintiff's employment at a theatre, procured for him by the defendant acting under a contract by the union with the theatre to furnish it operators, that he might be supplanted by a union man on the defendant's demand; and warranted a finding that the procuring by the defendant of the plaintiff's discharge in order to replace him with a union man was unlawful and entitled him to damages.

To establish, at the trial of an action against the business agent of a labor union, the cause of a failure by the plaintiff to procure new employment by another employer after a discharge unlawfully procured by the defendant, evidence was admissible that that employer, in cancelling an appointment made with the plaintiff's brother for an interview with the plaintiff, stated to the brother that he had talked with the defendant and "the deal was off."

Tort. Writ in the Superior Court dated January 10, 1936.

The case was tried before *Dillon*, J., and a verdict was returned for the plaintiff in the sum of $1,500.

*H. J. Williams*, for the defendant.

*J. W. Murdoch*, for the plaintiff.

Cox, J. The plaintiff in this action of tort seeks to recover damages for the allegedly wrongful acts of the defendant in causing his discharge from his employment and thereafter preventing him from obtaining employment. The jury returned a verdict for the plaintiff. The defendant's exceptions are to the denial of his motion for a directed verdict and to the admission of evidence.

The jury could have found that the defendant was the business agent of a motion picture operators' union local. The union had a contract with a theatre in Quincy by the terms of which it was required "to furnish all the men necessary to 'man the booth.'" In about 1929, when sound pictures came in vogue, there were not enough members of the union to supply the demand for operators, and a system was inaugurated whereby "permit men," who were licensed as operators by the Commonwealth, were sent from time to time to theatres when men were needed. In 1929, because of the wages paid at the Quincy Theatre (it being a so called concession house where regular union wages were not paid) there was no member of the union who could be assigned to that theatre. because of the refusal of the members to work on "concession jobs," and the plaintiff, who was a so called "permit man," but not a member of the union, was sent by the defendant, in his capacity of business agent, to work there and continued to do so until some time in January, 1933, when, at the direction of the defendant, the plaintiff was replaced by one Perlo who was a member of the union. Although there was evidence that Perlo had demanded the position held by the plaintiff, there was also evidence that he had not.

The defendant contends that he was justified in what he did because of the contract between the union and the Quincy Theatre, and that the plaintiff, in accepting employ-

ment there, impliedly agreed that it was dependent upon, and subordinate to, that contract, so that he could not complain, if, at any time during his employment, he was supplanted by a member of the union. The only evidence as to the terms of the contract, which was not produced at the trial, was that by it the union was required to furnish operators to "man the booth." There was evidence that at all times up to the time of the trial the union did not have sufficient members to fill the needs of theatres that were served by the union, and that there was no provision of the constitution or by-laws of the parent or local union, or any vote, that would authorize or sanction the discharge of a nonunion operator who had once been put to work. There was other evidence that the plaintiff was required to pay ten per cent of his salary weekly to the union "so as to give them no chance to kick . . . [him] off the job," and officers of the union testified that by these payments he "got the protection of his job." At the time the plaintiff was discharged, the owner of the Quincy Theatre called the defendant and asked "what the idea was and said that he was satisfied with things as they were"; he asked the defendant, "Does . . . [the plaintiff] have to get through?" and the defendant replied, "You're satisfied, aren't you? It has to be that way."

We are of opinion that it was a question of fact for the jury whether there was any such implied term of the plaintiff's contract of employment with the theatre as contended by the defendant. The jury could have found that the defendant was not justified in interfering with the plaintiff's employment by reason of the contract that the union had with the Quincy Theatre. *R. H. Stearns Co.* v. *Anderson,* 304 Mass. 138, 145, and cases cited. The case of *Butterfield* v. *Byron,* 153 Mass. 517, 519, 520, is distinguishable. It follows that the jury could have found that the plaintiff's employment was interfered with by the defendant without lawful justification, and that the plaintiff was entitled to damages. *Lopes* v. *Connolly,* 210 Mass. 487, 494–495. *Comerford* v. *Meier,* 302 Mass. 398, 404, and cases cited. *Sullivan* v. *Barrows,* 303 Mass. 197, 203.

There was evidence that the plaintiff was unable to obtain work after his discharge; that in September, 1935, his brother applied in his behalf for an open position at another theatre and that the manager there asked to have the plaintiff come to see him on a Friday. Subject to the defendant's exception, the brother was permitted to testify that before that Friday the manager told him that since their last talk he had talked with the defendant and "the deal was off." There was no error in the admission of this evidence. *Hubbard* v. *Allyn*, 200 Mass. 166, 174, and cases cited. *Brannen* v. *Bouley*, 272 Mass. 67, 72. *Malloy* v. *Carroll*, 287 Mass. 376, 392, 393.

*Exceptions overruled.*