ANDREW P. KEEGAN vs. MICHAEL J. O'DONNELL & others.

Suffolk.    November 7, 1941. — November 25, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Unlawful Interference. Malice. Labor Union. Equity Jurisdiction*, Plaintiff's clean hands. *Contract*, Performance and breach. *Evidence*, Presumptions and burden of proof.

A violation by a plaintiff of an agreement with a labor union would not bar his recovery of damages from an officer of the union for an intentional, unauthorized and unjustified interference with the plaintiff's business having no relation to such agreement.

One who intentionally interferes with the business of another to his damage has the burden of showing that the interference was legally justified.

An unauthorized order by an officer of a local of a labor union to one of its members to cease performing certain services for the plaintiff, intentionally given in order to compel the plaintiff to induce employees of a corporation of which he was an officer to transfer their membership to such local from another local, was unjustified and malicious in law and entitled the plaintiff to recover from the officer damages for injury caused to the plaintiff's own business by the cessation of such services.

BILL IN EQUITY, filed in the Superior Court on July 28, 1939.

The defendant Sullivan appealed from decrees entered by order of *Broadhurst*, J.

*D. G. Nagle*, for the defendant Sullivan.

*W. S. Kinney*, for the plaintiff.

RONAN, J.    The plaintiff brings this bill in equity against the officers and members of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, Local 25, hereinafter called the local, a voluntary association, for an injunction restraining the defendants from interfering with his business and for the assessment of damages.    The defendant Sullivan appealed from an interlocutory decree overruling his exceptions to the reports of the master and confirming the reports, and from a final decree dismissing the bill as against all defendants except Sullivan and order-

ing him to pay the plaintiff damages in the amount of $2,000, together with costs.

We summarize the facts disclosed by the reports of the master. The plaintiff in May, 1939, became engaged in the trucking business under the name and style of K & K Trucking Company. He was an officer of the Golden Arrow Motor Line, Inc., a company engaged in trucking brewery products in Boston which employed truckmen, all of whom were members of Local 14 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers. The plaintiff was also an officer of the Eastern Carloading Company which was engaged in soliciting freight between Boston and New York and Brooklyn. All three concerns occupied the same office. All of the plaintiff's business was procured from the Eastern Carloading Company. His business was conducted by transporting brewery products upon trailers, which were drawn to a railroad freight yard, loaded on flat cars and shipped by rail to New York and Brooklyn where they were unloaded and the empty trailers then reshipped by rail to Boston. C. Bowen, Inc. had an exclusive franchise with the railroad for the loading of flat cars at the freight yard, and the loading of the trailers upon the cars was performed by one King, an employee of C. Bowen, Inc., and a member of Local 25. The plaintiff entered into a written agreement with Local 25 about the first of June, 1939, by which he agreed to employ as chauffeurs and helpers only members of that local. Later on, in June, he conferred with officials of the local. At this conference Sullivan stated to the plaintiff that the local wanted to have the employees of the Golden Arrow Motor Line, Inc. transfer their membership from Local 14 to Local 25. The plaintiff replied that it was a matter for these employees to decide but that he would take the matter up with them. The plaintiff was informed that one of his employees, Shea, was not a member of the local and that the plaintiff's brother, Leo, was doing occasional work as a helper. The plaintiff was also told at this conference that he was expected to sign a flat car agreement with the local. Such an agreement was subsequently exe-

cuted on June 26, 1939. The plaintiff discontinued Shea's employment on June 10, 1939, upon learning that he was not a member of Local 25. The plaintiff's brother, Leo, was the plaintiff's bookkeeper and was manager of the Eastern Carloading Company. He had worked occasionally as a helper, for which he received no compensation. He ceased to perform any such services after July 1, 1939.

Sullivan, the president and business agent of Local 25, instructed King on July 6, 1939, not to load the plaintiff's trailers upon the flat cars, and King, on the same day, in compliance with such instructions, refused to load the two trailers that were delivered at the freight yard and two trailers that were delivered the next day. These trailers remained in the freight yard until July 12, 1939, when they were removed and shipped by steamship to New York. The plaintiff discontinued business on July 7, 1939. The master reported that the said conduct of Sullivan damaged the plaintiff to the extent of $2,000.

The principal contention of Sullivan is that the plaintiff is barred from relief on account of a violation by the plaintiff of his agreement to hire only members of Local 25. The master found that this agreement was in full force and effect on June 26, 1939, when the plaintiff signed the flat car agreement with the local and that it continued in effect thereafter. The plaintiff's brother, Leo, performed no services after July 1, 1939. Such services as he performed would appear to have been for the accommodation of the plaintiff and such as one brother might naturally perform for another brother on account of their relationship and not upon any commercial basis. The extent of these services is not disclosed by the record. The local itself took no action either under the first agreement or otherwise against the plaintiff on account of these services of his brother. Evidently, it did not consider the matter of sufficient importance to warrant any action by it. If the acceptance by the plaintiff of these services was contrary to that agreement with the local, yet such a breach was so trivial that it did not put an end to the agreement. *National Machine & Tool Co.* v. *Standard Shoe Machinery Co.* 181

Mass. 275, 279. *Marcus* v. *Clark,* 185 Mass. 409. *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41, 48. *Casavant* v. *Sherman,* 213 Mass. 23. *Crabtree* v. *Bay State Felt Co.* 227 Mass. 68. *McIntosh* v. *Abbot,* 231 Mass. 180. But the short answer to this contention is that the plaintiff does not base his case on any agreement or upon anything arising out of any agreement. Moreover, Sullivan's conduct has no relation whatever to any agreement between the plaintiff and the local. The master found that Sullivan's act in ordering King not to load the plaintiff's trailers was not authorized by Local 25 or by any of the defendants. It follows that Sullivan was acting entirely on his own personal responsibility. Any technical violation by the plaintiff of his agreement with the local, if there were any, was separate, distinct and independent of the specific wrong committed by Sullivan and would not under these circumstances bar the plaintiff from maintaining the suit against him. *Kelly* v. *Halox,* 256 Mass. 5. *Hyland* v. *Hyland,* 278 Mass. 112. *Service Wood Heel Co. Inc.* v. *Mackesy,* 293 Mass. 183. *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229. *Gerace* v. *Gerace,* 301 Mass. 14. *Shulkin* v. *Shulkin,* 301 Mass. 184. *Westhampton Reservoir Recreation Corp.* v. *Hodder,* 307 Mass. 288.

In accordance with the findings of the master, Sullivan knew that his order to King not to load the plaintiff's trailers would be obeyed and that the plaintiff's business would be thereby injured, and he intended such a result. That order of Sullivan could properly be found to be tortious in the light of the attending circumstances unless it was justified. The burden was upon him to prove that, in giving the order to King, he was exercising a right of equal dignity in law with the right of the plaintiff to conduct and manage his business in a lawful manner in accordance with his own judgment and discretion. He could not, however, exert pressure upon the plaintiff to compel him to induce the employees of the Golden Arrow Motor Line, Inc., to transfer their membership from Local 14 to Local 25. We fail to find anything in the reports of the master that would furnish a justification in law for the conduct of Sullivan.

*Service Wood Heel Co. Inc.* v. *Mackesy,* 293 Mass. 183. *Yankee Network, Inc.* v. *Gibbs,* 295 Mass. 56. *Comerford* v. *Meier,* 302 Mass. 398. *Quinton's Market, Inc.* v. *Patterson,* 303 Mass. 315. The intentional interference with the plaintiff's business, in the absence of any legal justification, was malicious in law and entitled the plaintiff to damages. *McGurk* v. *Cronewett,* 199 Mass. 457. *Godin* v. *Niebuhr,* 236 Mass. 350. *Sullivan* v. *Barrows,* 303 Mass. 197. *Tompkins* v. *Sullivan,* 309 Mass. 496. *Sullivan* v. *Burke,* 309 Mass. 493.

There was no error in overruling the various exceptions taken to the reports of the master. All of them relate to findings made by the master, and none of the findings excepted to is inconsistent with any of the other findings appearing in the reports. The amount of damages found by the master may be more than Sullivan might reasonably expect to pay, but we cannot say that any of the findings of the master demonstrates error in the assessment of damages. The matter to a large extent must rest upon common sense and sound judgment aided by a knowledge of practical affairs and a determination to reach a just result from the facts established by the testimony. *Cross* v. *Sharaffa,* 281 Mass. 329. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207. *Levine* v. *Lawrence & Co. Inc.* 305 Mass. 210.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*