**NORTHEAST AIRLINES, INC.**

v.

**WORLD AIRWAYS, INC.,** Nationwide Charters and Conventions, Inc. and Harold Low.

**NATIONWIDE CHARTERS AND CON-VENTIONS, INC.**

v.

Bernard **GARBER,** Gilbert Garber and Garber's Travel Service, Inc.

Harold **LOW**

v.

Bernard **GARBER,** Gilbert Garber and Garber's Travel Service, Inc.

**Civ. A. Nos. 64–879(c)–G, 66–60–G, 66–61–G.**

United States District Court
D. Massachusetts.

Dec. 30, 1966.

Laurence S. Fordham, Foley, Hoag & Eliot, Boston, Mass., for Northeast Airlines, Inc., Plaintiff.

Gael Mahony, Hill & Barlow, Boston, Mass., for World Airways Inc., Nationwide Charters and Harold Low.

Henry S. Healy, Hill & Barlow, Boston, Mass., for Nationwide Charters & Conventions, Inc. and Harold Low.

John G. S. Flym, Jerome Preston, Jr., Boston, Mass., for Bernard Garber and others.

## MEMORANDUM

GARRITY, District Judge.

These are three cases in which a travel agency, Nationwide Charters and Conventions, Inc. ("Nationwide") and its president Harold Low seek damages for loss of business and other injuries allegedly caused them by Northeast Airlines, Inc. ("Northeast") and a competing travel agency and its officers (hereinafter referred to in the singular as "Garber's") which allegedly collaborated with Northeast. The claims of Nationwide and Low are contained in various counts, for abuse of process, violation of the antitrust laws, tortious interference with business relations and slander. One case, No. 64–879(c), was instituted in this court in the form of a counterclaim in a suit which has gone to judgment in favor of Northeast, with a qualification hereinafter noted. The other cases, Nos. 66–60 and 66–61, involve similar claims and were instituted in the state court of Massachusetts and removed to this court. Northeast and Garber's have filed motions for summary judgment or to dismiss. The motions were joined for hearing.

In the suit commenced in this court, No. 64–879, Northeast sought to enjoin Nationwide, Low and World Airways, Inc. ("World") from violating certain rules of the Civil Aeronautics Board ("Board") while operating a charter flight program. World is a certified supplemental air carrier and Nationwide's business includes the sale of air transportation service for charter trips. The defendants filed counterclaims, which were separated from the main action by an order of March 5, 1965 designating them as No. 64–879(c). The counterclaim of World was dismissed by order of this court on May 12, 1966.

The counterclaim of Nationwide and Low alleges that Northeast abused the process of this court, has violated the antitrust laws of the United States, in-

duced charter groups to breach contracts with Nationwide and to refuse to enter into contracts with Nationwide. Northeast filed motions for summary judgment on, or dismissal of, the defendants' counterclaim.

The background of the motions for summary judgment and dismissal is the suit commenced by Northeast under § 1007 of the Federal Aviation Act (49 U.S.C. § 1487) to enjoin the defendants from engaging in unauthorized air transportation in violation of § 401(a) of the Federal Aviation Act (49 U.S.C. § 1371 (a)). A recital of those proceedings is necessary for an understanding of the questions now at issue.

On December 17, 1964 Northeast filed a motion for a preliminary injunction. The gravamen of its complaint was that Nationwide and Low were actively soliciting groups to travel on World's charter flights pursuant to a Sales Agency Agreement in violation of the certificate of public convenience and necessity issued to World by the Board. Northeast further alleged that the defendants solicited persons to take charter flights who were not eligible to take such flights, in violation of the Board's certificate issued to World. A hearing was held on the motion for a preliminary injunction on December 21, 1964. The court filed a memorandum stating that an injunction would issue restraining the defendants from operating any and all charter flights between Boston, New York, Philadelphia and Washington on the one hand, and Florida and the Hawaiian Islands on the other hand, except those approved by the Board. On December 23, 1964 the court amended its memorandum to require that the plaintiff forthwith give security of $50,000 and give additional security in the amount of $50,000 on each of three successive dates. On December 24, 1964 the court issued a preliminary injunction. On March 16, 1965 the court ordered summary judgment for Northeast, which had the effect of making the preliminary injunction permanent.

All defendants appealed. On August 13, 1965 the Court of Appeals affirmed. World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 1965, 349 F.2d 1007. The court noted that the only issue was whether the contract entered into between World and Nationwide, in which World made Nationwide its agent to sell the capability of its aircraft for charter flights, and in which Nationwide was obligated to pay fixed amounts as liquidated damages if a flight were canceled, violated the certificate issued by the Board to World. The judgment of the district court was affirmed insofar as it enjoined the operation and performance of the Sales Agency Agreement in connection with flights from the East Coast points to Florida. The case was remanded for findings with respect to the Hawaii flights and modification of the judgment, if called for. Subsequently, on November 1, 1965, the district court made findings with respect to the Hawaii flights and entered summary judgment for Northeast. On appeal, however, the court stated that the record did not establish conclusively that Northeast was a "party in interest" with respect to the Hawaii flights and remanded the case for further findings. World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 1966, 358 F.2d 691.

The counterclaim of Nationwide and Low is in four counts. Count I alleges that Northeast, by means of conscious misrepresentations, maliciously caused the district court to enter a preliminary injunction, the effect of which was to put the defendants out of business. Court II alleges that Northeast was in competition with Nationwide for arranging the interstate transportation of bona fide charter groups and that Northeast conspired with others (Garber's Travel Service, Inc., and Bernard Garber) to restrain trade and has unlawfully restrained trade in violation of the antitrust laws of the United States, in particular § 1 of the Sherman Act (15 U.S.C. § 1). Count III alleges that Northeast instituted its action in the district court in order to cause bona fide charter

groups to break their contracts with Nationwide, and that Northeast maliciously intimidated bona fide charter groups having contracts with Nationwide and induced such groups to break their contracts with Nationwide. Count IV alleges that Northeast maliciously intimidated bona fide charter groups from entering into contracts with Nationwide and induced such groups to refuse to enter into contracts with the defendant.

Count I of the counterclaim is for abuse of process. Under federal law a party enjoined may recover damages from an injunction improvidently granted solely upon and to the extent of any injunction bond unless he can prove malicious prosecution. Greenwood County v. Dube Power Co., 4 Cir., 1939, 107 F.2d 484, 131 A.L.R. 870. See Jamaica Lodge 2188, etc. v. Railway Express Agency, Inc., E.D.N.Y.1961, 200 F.Supp. 253, and the cases cited therein. In the instant case the moving parties do not contend that they allege facts sufficient to support an action for malicious prosecution. See Morfessis v. Baum, 1960, 108 U.S. App.D.C. 303, 281 F.2d 938. Federal cases arising out of injunctions improvidently issued by state courts are not in point. Northern Oil Co. v. Socony-Mobile Oil Co., 2 Cir., 1965, 347 F.2d 81, and Texaco, Inc. v. Harrison, E.D.Pa.1962, 30 F.R.D. 127. Therefore Count I is dismissed.

Count II is brought pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages for alleged violations by Northeast and co-conspirators of the antitrust laws of the United States. It alleges that Northeast and the co-conspirators (a) made false and defamatory statements concerning Nationwide in order to divert business from Nationwide; (b) made false complaints to the Board; (c) instituted baseless litigation against Nationwide in the district court; and (d) induced charter groups to breach their agreements with Nationwide.

The defendants are alleging a *per se* violation of the Sherman Act, that is, agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable. Northern Pac. R. Co. v. United States, 1958, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545. Traditional examples of *per se* violations of the Sherman Act are price-fixing, division of markets, group boycott, or tying arrangements. As was said in Atlantic Heel Co. v. Allied Heel Co., 1 Cir., 1960, 284 F.2d 879, at 884.

Viewing the conspiracy alleged in the instant case, we believe that the purpose of destroying a competitor by means that are not within the area of fair and honest competition is a purpose that clearly subverts the goal of the Sherman Act. It constitutes an interference with the natural flow of interstate commerce which would exist under conditions of fair and honest rivalry for the buyer's trade.

The allegations in Count II describe conduct which is proscribed by the Sherman Act. Not all the plaintiff's activities complained of were related to the injunction it secured, and which it had a legal right to secure. The making of false and disparaging statements about a competitor, and false and malicious complaints to an administrative body, inducing charter groups to breach their contracts with the defendants, and restraining the defendants from competing are facts "not within the area of fair and honest competition". Atlantic Heel Co. v. Allied Heel Co., supra at p. 884; Albert Pick-Barth Co. v. Mitchell Woodbury Corp., 1 Cir., 1932, 57 F.2d 96. A cause of action for violation of the Sherman Act has been established if the defendants can establish that they were damaged by a violation of the antitrust laws. Section 4 of the Clayton Act (15 U.S.C. § 15). Banana Distributors, Inc. v. United Fruit Co., S.D.N.Y.1958, 162 F.Supp. 32, 45; Molinas v. National Basketball Association, S.D.N.Y.1961, 190 F.Supp. 241. Although the defendants allege in their counterclaim that they were put out of business by the preliminary injunction, for which they are not entitled to recover damages, Maltz v. Sax, 7 Cir.,

1943, 134 F.2d 2, they are entitled to an opportunity to establish that the plaintiff's activities caused them to suffer damage prior to the issuance of the injunction.

Counts III and IV allege activities causing charter groups to breach existing contracts with Nationwide and Low and inducing charter groups to refuse to enter into contracts with Nationwide and Low. Each count cites two types of activity by Northeast: (1) causing the district court to enter the preliminary injunction, and (2) taking "advantage of its pending litigation with the defendant by maliciously intimidating bona fide charter groups" to break existing contracts or to refuse to enter contracts.

There is no cause of action for inducing the breach of an illegal contract. The Court of Appeals, however, did not hold that the contracts between Nationwide and the charter groups were illegal, but rather that the contract between Nationwide and World was illegal. World Airways, Inc. v. Northeast Airlines, Inc., 1 Cir., 1965, 349 F.2d 1007, 1012. So far as appears in the pleadings and affidavits, Nationwide may have had contracts with charter groups, or was about to enter into contracts with charter groups, which did not involve the contract with World. The court does not know whether the certificates issued by the Board to other airlines contained the same prohibitions which were violated by World.

■■■ It is an actionable tort to induce a person with whom a plaintiff has a contract to breach that contract if the defendant has notice of the existence of the contract; and it is no defense that the defendant is a competitor of the plaintiff and that the inducing was in pursuance of such competition. Beek-

man v. Marsters, 1907, 195 Mass. 205, 80 N.E. 817, 11 L.R.A.,N.S., 201. It appears that Count III states a cause of action.

■■■ As to Count IV, it is *prima facie* unlawful to induce a third person not to deal with the plaintiff where such person is negotiating with the plaintiff if the defendant has knowledge of the relationship. Keegan v. O'Donnell, 1941, 310 Mass. 346, 37 N.E.2d 995. It can be justified on competitive grounds, however, unless defendant is motivated by malice or wantonness. Walker v. Cronin, 1871, 107 Mass. 555. The counterclaim alleges malice and therefore also states a cause of action.

Count I of each declaration in the removed actions alleges abuse of process. These counts are dismissed for the reasons set forth in dismissing Count I of the counterclaim. Count II of No. 66–60 alleges interference with existing contractual relations. Counts II, III and IV of No. 66–61 and Counts III, IV and V of No. 66–60 allege slander. All the statements alleged in these counts are defamatory, *per se*, since all impute to one or more of the plaintiffs, corruption, dishonesty, misconduct in his business, or the lack of some quality demanded of a person in the lines of endeavor pursued by them. Lynch v. Lyons, 1938, 303 Mass. 116, 117, 119, 20 N.E.2d 953. Lahr v. Adell Chemical Co., 1 Cir., 1962, 300 F.2d 256.

In consideration of the above, it is ordered that the motions for summary judgment or to dismiss are allowed as to Count I of the counterclaim (No. 64–879(c)) and Counts I in both removed actions (Nos. 66–60 and 66–61). The motions are denied as to all other counts of the counterclaim and of the removed claims.