**FLAG FABLES, INC., Plaintiff,**

v.

**JEAN ANN'S COUNTRY FLAGS AND CRAFTS, INC., Jean Ann Fede and Michael Fede, Defendants.**

**Civ. A. No. 89–30109–F.**

United States District Court,
D. Massachusetts.

Dec. 17, 1990.

Donald S. Holland, Malcolm J. Chisholm, Jr., Longmeadow, Mass., for plaintiff.

William S. Strong, Kotin, Crabtree and Strong, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

In this case, plaintiff Flag Fables, Inc. sued defendants Jean Ann's Country Flags and Crafts Inc., Jean Ann Fede and Michael Fede for copyright infringement, in violation of the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Defendants counterclaimed for malicious interference with business relations. Defendants prevailed on all counts at trial, and the parties have filed various post-trial motions.

Four motions, two by plaintiff and two by defendants, are now before the Court. First, plaintiff Flag Fables has filed a motion for judgment notwithstanding the verdict and for a new trial. In this motion, plaintiff seeks a new trial on the copyright claims. Plaintiff also seeks judgment notwithstanding the jury's verdict on defendants' counterclaim for malicious interference with business relations or, in the alternative, a new trial on the counterclaim. Second, plaintiff moves for an order compelling discovery. With this motion, plaintiff hopes to gain access to documents which defendants allegedly withheld from plaintiff during discovery.

Third, defendants have filed a motion for costs, attorney's fees, and sanctions against plaintiff. Fourth, defendants have moved to recover against plaintiff's bond. Defendants argue that the preliminary injunction issued by the Court pursuant to plaintiff's request caused defendants to suffer economic injury, and that defendants should be recompensed out of plaintiff's bond.

The Court will consider each motion *seriatim.*

### II. PROCEEDINGS BELOW

On June 19, 1989, the Court granted plaintiff's request for a preliminary injunction. The Court thereby enjoined defendants from selling eight decorative flags at an upcoming crafts show or in any other commercial setting. *Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc., et al.,* 730 F.Supp. 1165 (D.Mass.1989). Pursuant to defendants' motion, the Court in December 1989 required plaintiff to post a bond to protect defendants against the loss of profit and goodwill in the event that

they should succeed in the litigation. Plaintiff posted bond in the amount of $20,000 shortly thereafter, and the preliminary injunction remained in force.

On August 24, 1990, after seven days of trial and more than six hours of deliberation, a jury of six returned a verdict in favor of defendants on all of plaintiff's claims. In addition, the jury found plaintiff liable to defendants for malicious interference with business relations, awarding as damages $75,600. The Court immediately dissolved the outstanding preliminary injunction, and soon thereafter entered judgment in defendants' favor and in accordance with the jury's verdict.

Subsequent to the entry of judgment, the parties filed the instant motions, along with memoranda. The Court, having fully considered the four motions and the abundant affidavits, exhibits, and memoranda, denies all of the motions.

## III. DISCUSSION

### A. *Plaintiff's Motion for Judgment Notwithstanding the Verdict and New Trial*

Plaintiff seeks judgment notwithstanding the verdict on defendants' counterclaim or, in the alternative, a new trial on the counterclaim. *See* Fed.R.Civ.P. 50. Plaintiff also requests, pursuant to Federal Rule of Civil Procedure 59, a new trial on the copyright claims. *Id.* The Court will first address plaintiff's arguments for judgment notwithstanding the verdict and then proceed to the new trial arguments.

#### 1. Judgment Notwithstanding the Verdict on the Counterclaim

"When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict ... or by judgment notwithstanding the verdict." *Brady v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232,

234–35, 88 L.Ed. 239 (1943). A party's motion for judgment notwithstanding the verdict must be granted if, viewing the evidence and reasonable inferences in a light most favorable to the non-moving party, reasonable men would nonetheless find in the movant's favor. *Jordan v. United States Lines, Inc.*, 738 F.2d 48, 49 (1st Cir.1984) (citations omitted); *accord deMars v. Equitable Life Assurance Society*, 610 F.2d 55, 57 (1st Cir.1979). This Court will not grant a judgment notwithstanding the verdict unless the jury's verdict is untenable under any reasonable assessment of the evidence adduced at trial.

■ Plaintiff argues that the Court must set aside defendants' verdict on the counterclaim of malicious interference with business relations. Under Massachusetts law, in order to prove a claim of malicious interference, defendants must prove by a preponderance of the evidence that plaintiff committed intentional and willful acts; that these acts were designed to damage defendants' business; that the acts were done maliciously; and that the acts caused defendants to sustain actual damages. *Chemawa Country Golf, Inc. v. Wnuk*, 9 Mass.App.Ct. 506, 509, 402 N.E.2d 1069, 1072 (1980); *see also Kazmaier v. Wooten*, 761 F.2d 46, 51–52 (1st Cir.1985).[1]

■ In essence, plaintiff proffers four arguments as to why the Court should grant judgment in plaintiff's favor on the counterclaim. The Court will address each in turn. First, plaintiff contends that defendants never established proximate cause as required by law. *See Chemawa Country Golf, supra.* Plaintiff's Memorandum Supporting Its Motions for Judgment Notwithstanding the Verdict and for New Trial at 18 (September 11, 1990) ("Plaintiff's JNOV Memorandum"). Plaintiff concedes that it sent malevolent letters to past Flag Fables customers and other persons in the country crafts business. However, plaintiff argues that defendants offered no evi-

---

1. These elements apply when the complaint alleges interference with either existing or potential (that is, future) contractual relations. *Chemawa Country Golf*, 9 Mass.App.Ct. at 509–10,

402 N.E.2d at 1072 (Interference with potential contractual relations "is a recognized extension of the more typical tort" of interference with existing contractual relations.).

dence linking plaintiff's conduct to defendants' damages.

The Court disagrees. Defendants offered evidence that plaintiff attacked the quality of defendants' product in a letter mailed to many crafts show patrons; that plaintiff caused the complaint to be served on defendants at a crafts show, in the presence of potential customers and business associates; and that plaintiff wrote letters to various crafts shows, informing the shows of the pending lawsuit and accusing defendants of copyright infringement. This evidence, combined with evidence of lost sales and profits, provided the jury with ample evidence from which it could infer that plaintiff's conduct proximately caused defendants to suffer economic injury. The jury may and often must make reasonable inferences based on the evidence offered by the parties. Given the evidence summarized above, the Court will not now hold that the jury's determination as to causation goes against the clear weight of the evidence.

Second, plaintiff argues that any damages sustained by defendants resulted from the Court's preliminary injunction, not from any conduct by plaintiff. However, a brief inspection of the chronology of the events and the evidence itself exposes this argument as meritless. Plaintiff served its complaint on defendants *prior* to the issuance of the injunction, and in the presence of customers and business associates at a crafts show. Likewise, plaintiff sent letters alleging copyright infringement by defendants before the Court issued the preliminary injunction. Furthermore, the jury could reasonably have found that some of plaintiff's activities independently caused defendants to suffer injury,

regardless of whether or when the Court took any equitable action.

Third, plaintiff argues that defendants' evidence did not establish malice, as required by law, and that defendants' counterclaim for malicious interference must therefore fail. Massachusetts courts have determined that an act is done with malice when "done with the unlawful purpose to cause ... damage and loss, without right or justifiable cause...." *Chemawa Country Golf*, 9 Mass.App.Ct. at 509, 402 N.E.2d at 1072, *quoting Walker v. Cronin*, 107 Mass. 555, 562 (1871).

The jury could reasonably have found that plaintiff's activities constituted acts done with malice. Defendants offered evidence that plaintiff demanded that defendants discontinue the promotion and sale of particular flags for copyright reasons, but that plaintiff constantly changed the identity of the alleged infringing flags. Testimony also indicated that Wendy Diamond [2] harbored spiteful feelings toward defendants and that she acted on these feelings in various ways: by sending the cease and desist letter; by mailing the customer letters; by serving process at the crafts show; and through other conduct. This evidence supports a finding of malice.[3]

Fourth, plaintiff contends that the conduct in question was merely lawful conduct taken by plaintiff to enforce the injunction. The Court rejects this argument. As previously detailed, some of plaintiff's tortious conduct actually took place before the Court issued the injunction. Other conduct, like frequently changing the list of allegedly infringing flags and attacking the quality of defendants' flags in customer correspondence, indicates that plaintiff went beyond mere enforcement of the injunction.

2. Ms. Diamond has owned Flag Fables and served as its president throughout the pendency of this action.

3. The Court notes in passing that in Massachusetts, a plaintiff need not allege or establish malice in order to state a claim for intentional interference with prospective business relations. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 814, 551 N.E.2d 20, 22 (1990). In the business relations context, a plaintiff proves

malice as long as he demonstrates that another person intentionally interfered with plaintiff's business. *Keegan v. O'Donnell*, 310 Mass. 346, 350, 37 N.E.2d 995, 997 (1941). Therefore, even if defendants had failed to prove malice in the traditional sense (that is, bad purpose or ill will), the evidence clearly supports a finding that plaintiff by its acts intended to interfere with defendants' business. Such a finding alone would suffice to support the jury verdict.

### 2. New Trial on the Counterclaim and the Copyrights Claims

Having found judgment notwithstanding the verdict inappropriate, the Court must now consider whether plaintiff is entitled to a new trial on the counterclaim or on the copyright claims. · The Court may set aside a verdict and grant a new trial "when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." *Phav v. Trueblood, Inc.*, 915 F.2d 764, 766 (1st Cir.1990) (citations omitted). While a trial court should not grant a new trial simply because the court would have reached ‚a different conclusion, the court wields broad discretion in determining whether to grant a new trial. *de Perez v. Hospital del Maestro*, 910 F.2d 1004, 1006 (1st Cir.1990). This Court exercises its discretion frugally, and will not grant a new trial unless necessary to prevent a significant dereliction of justice.

#### a. New Trial on the Counterclaim

■ The Court will not grant a new trial for the counterclaim. Trial lasted seven days, and both parties had ample opportunity to, and did, offer the evidence they deemed proper. The Court has briefly summarized the evidence in the preceding pages, and the verdict is consistent with that evidence. Plaintiff has not persuaded the Court that a new trial is necessary to avoid injustice, and the jury's verdict on the counterclaim will therefore stand.

#### b. New Trial on the Copyright Claims

Neither will the Court grant plaintiff a new trial on the copyright infringement claims. Plaintiff has offered numerous reasons why the Court should grant the motion for new trial. *See generally* Plaintiff's JNOV Memorandum at 3–17. While the Court finds that none of the offered reasons mandate a new trial, the Court will specifically address three of plaintiff's most fervent arguments.

#### i. Defendants' Survey Evidence

■ Plaintiff argues that the Court improperly admitted a survey into evidence. The survey, prepared by defendants' surveyor Kim Craven, maintains that out of all flags examined in a random sampling of flags sold by Flag Fables, 48% had no kind of copyright notice affixed to them. Defendants offered the survey to show that plaintiff did not affix proper notice to the articles for which it claims copyright protection. *See* 17 U.S.C. §§ 401, 405.[4]

Plaintiff contends that the Court should not have allowed the survey as evidence in the case because defendants failed to produce the survey data or related documents before trial, in violation of defendants' discovery obligations. Plaintiff further avers that had defendants produced the information as required, plaintiff would have significantly discredited the survey on cross-examination and in closing argument. Plaintiff maintains that it suffered unfair prejudice and surprise due to admission of the survey evidence, and that a new trial would provide an appropriate remedy.

Defendants take issue with plaintiff with regard to discovery of the survey data and related documents. In an affidavit, defendants' counsel insists that he made available to plaintiff's counsel the entire survey and all relevant material upon request by plaintiff.

The Court will not now attempt to resolve discovery disputes. Suffice it to say that the Court properly admitted the evidence, and that plaintiff's counsel had ample opportunity to, and in fact did, cross-examine Ms. Craven with regard to the survey. Plaintiff's counsel conducted an able cross-examination; he exposed the survey as inconsequential, pointing out the small sample size, and the non-scientific nature of the survey. The Court further finds that comments of the Court and plaintiff's

---

**4.** A person must comply with statutory notice requirements in order to protect his work under the Copyright Act. A person wishing copyright protection may place notice on publicly distributed works in order to satisfy the notice requirement. 17 U.S.C. § 401. Or, if a person neglects to affix notice on published copies, he can still enjoy copyright protection if he "cures" the notice deficiency as provided in section 405. However, failure to affix notice on published copies and failure to properly cure will result in loss of copyright.

counsel sufficiently apprised the jury of the value and reliability of the survey.[5] While the survey had little evidentiary value, it did constitute admissible evidence, and the Court properly allowed it before jury.

Even if the Court erroneously admitted the survey into evidence, and plaintiff's counsel had had no opportunity to cross-examine Ms. Craven or otherwise attack the survey, the Court believes that its admission would constitute harmless error. Defendants offered considerable evidence other than the survey to show that plaintiff did not adequately fulfill its notice obligations as required by the copyright laws. For example, many of the flags admitted into evidence at trial bore no copyright notice. Various witnesses testified that Pamela Stewart[6] allowed Flag Fables employees to take flags home or give them as gifts though the flags bore no copyright notice. The evidence that plaintiff actually made a "reasonable effort ... to add notice to all copies ... distributed to the public," 17 U.S.C. § 405(a)(2), was remarkably thin, consisting only of testimony of Ms. Stewart and Ms. Diamond, the past and present owners of Flag Fables. Plaintiff produced no testimony or other evidence indicating what steps, if any, plaintiff took to correct the notice deficiencies. Given these facts, the Court finds that the survey provided only marginal, cumulative evidence of omission of notice, and that admission of the survey into evidence does not comprise error requiring a new trial.

**5.** Ms. Craven testified with regard to the notice, if any, affixed to the flags she examined while conducting her survey. During Ms. Craven's testimony, the following exchange took place.
 MR. HOLLAND: In 1986, what if the flag had faded? Is it fair to assume that the flag that was purchased in the spring of '86 will have faded approximately the same amount as the flag that was purchased in '85 or '86?
 WITNESS: A lot—
 MR. STRONG: Your Honor, I don't think Mrs. Craven has been qualified to answer that question.
 THE COURT: I don't think she is qualified as a scientific survey taker, either.
 MR. HOLLAND: That's right.
 MR. STRONG: As opposed to scientific—
 THE COURT: If I knew that you had this, I don't know if it would be allowed.

### ii. The Court's Answer to Question from the Jury

■ Plaintiff also argues that the Court committed an error when answering a question of the jury. During its second day of deliberation, the jury addressed a written question to the Court. The jury's question reads as follows:

Is the plaintiff entitled to damages on any flag design that we feel doesn't have valid title and or compliance with the statutory requirement with respect to notice?

The Court, without consulting counsel, responded that "[t]he answer is no." Plaintiff argues both that the Court erred by not considering plaintiff's objections before answering the question, and that the Court answered the question incorrectly.

Various Supreme Court and First Circuit cases indicate that the Court should not make written communications to the jury without giving counsel an opportunity to object or offer advice. *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919) ("[W]ritten instructions ought not to be sent to the jury without notice to counsel and an opportunity to object."); *Rogers v. United States*, 422 U.S. 35, 38–40, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975) (Supreme Court uses *Fillippon* reasoning in a criminal context); *Voutour v. Vitale*, 761 F.2d 812, 816–17 (1st Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). However, this principle is "subject to the harmless error rule." *Voutour*, 761

. MR. STRONG: Your Honor.
 THE COURT: I'm allowing if [sic] for whatever the jury may make of it. That's all.
 MR. STRONG: Thank you, Your Honor.
 THE COURT: It should be noted that the plaintiff obviously must have sold hundreds of flags in the area over the course of the litigation. And to have seven of twelve determined to show lack of copyright notice does not indicate that they in fact did not have copyright notices on the flags in the area. But you want it in for purposes for which it's being admitted, I will allow it.
Trial Transcript at 31 (August 22, 1990).

**6.** Ms. Stewart founded Flag Fables in 1984, and served as its president. She sold Flag Fables to Ms. Diamond in 1988.

F.2d at 817, *citing United States v. Flaherty*, 668 F.2d 566, 602 (1st Cir.1981); *Rogers*, 422 U.S. at 40, 95 S.Ct. at 2095. The Court now holds that even assuming, without conceding, that the Court erred in answering the jury's question without notifying and consulting counsel, such error was harmless, and does not require a new trial.

There are at least two sound reasons why the alleged error is harmless. First, the answer offered by the Court correctly stated the law. Notwithstanding plaintiff's arguments to the contrary, it is beyond dispute that only a plaintiff who has valid copyright title, 17 U.S.C. § 501(b), and who has complied with statutory notice requirements, 17 U.S.C. §§ 401 *et seq.*,[7] may claim copyright protection, and thus collect damages for infringement. Plaintiff argues that the "question indicated that the jury was confused on the law," Plaintiff's JNOV Memorandum at 12, but the Court disagrees. The question indicates that the jury knew that notice and title are necessary elements of valid copyright ownership; the Court's response merely confirmed the jury's correct statement of the law. The question asks only whether plaintiff could collect any damages for infringement despite plaintiff's failure to satisfy these necessary elements. The answer clearly is no.

▆▆ Plaintiff further contends that because plaintiff registered its flag designs with the U.S. Copyright Office less than five years ago, it still has time to cure the copyright notice defects. 17 U.S.C. § 405(a)(2). This argument misconstrues entirely the purposes of section 405(a)(2). Section 405(a) provides in substance that a person who publishes a work without notice does not lose copyright protection over the work if the person "cures" the notice deficiency. Under subsection (2), a person may cure, and thus establish a valid copyright, if he i) registers the work at the U.S. Copyright Office within five years of the publication without notice, *and* ii) makes reasonable efforts to affix notice to those works containing the notice deficiency. A person attempting to cure notice deficiencies under subsection (2) must satisfy both criteria in order to have a valid copyright. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 196–97 (2d Cir.1985). Section 405(a) does not provide, and the Court can find no case holding, that a person who plans to cure within the five-year period may collect damages for copyright infringement.[8]

In this case, the jury found that plaintiff had thus far not complied with statutory notice requirements. Having failed to so provide notice, plaintiff cannot collect damages for infringement regardless of plaintiff's intention or likelihood of curing notice omissions within five years. To establish copyright protection, and the attendant right to damages for infringement, plaintiff must prove compliance with statutory requirements. It is not sufficient for plaintiff to show simply that the five-year curing period has not expired.

Second, the Court's answer to the question did not result in prejudice against plaintiff. This case differs from the authorities cited by plaintiff in that the Court here engaged in no extended or erroneous communication with the jury.[9] The pre-

---

7. The Berne Convention Implementation Act has drastically changed the copyright laws. As of March 1, 1989, a person claiming copyright protection need no longer meet statutory notice requirements. *See, e.g., Lloyd v. Schlag*, 884 F.2d 409, 411 n. 2 (9th Cir.1989).

8. Plaintiff cites *Shapiro & Son Bedspread Corp. v. Royal Mills Associates*, 764 F.2d 69 (2nd Cir. 1985), in support of its argument that the Court erroneously responded to the jury's question. *Shapiro*, however, offers plaintiff no solace. *Shapiro* does not permit a party to sue for copyright infringement without first having complied with notice requirements. Rather, the plaintiff in *Shapiro* eluded summary judgment by offering evidence and arguments that he had taken reasonable steps to cure notice deficiencies prior to bringing the action.

9. Compare the two civil cases cited by plaintiff with the case at bar. In *Fillippon*, a tort case, the trial judge wrote a lengthy sentence in response to the jury's question concerning contributory negligence. The judge's response, held erroneous as a matter of law by the Supreme Court, concerned the central issue in the case. *Fillippon*, 250 U.S. at 82–84, 39 S.Ct. at 436–438. In *Voutour*, the trial judge received three questions from the jury. The judge answered both the first and second questions, in separate written paragraphs, without notifying counsel of the

sumption of prejudice, often created by communications between judge and jury, *Voutour*, 761 F.2d at 817, is quickly dispelled given the circumstances and nature of the communications in this case. The facts of this case do not indicate jury confusion as in *Voutour*, do not involve misstatements of law by the Court as in *Fillippon*, and do not otherwise show that the Court's instruction subtly or blatantly aimed the jury in a direction unfavorable to plaintiff. Rather, the Court simply provided a correct, one-word response to the jury's straightforward question.

### iii. Plaintiff's Jury Confusion Arguments

The Court also rejects plaintiff's contention that the answers provided by the jury on the special verdict form indicate jury confusion and thus require a new trial. Plaintiff argues that the jury acted irrationally, especially in finding against plaintiff on issues of originality and title.

■ On the originality issue, the jury's answers indicate simply that plaintiff's evidence of originality left them unconvinced. The jury heard evidence that plaintiff, through the efforts and talents of Ms. Stewart and others, designed and assembled the flags in question. Various witnesses, however, testified that all of the flags were based on common craft themes.

Plaintiff, of course, had the burden of proving originality. That is, plaintiff needed to prove to the jury that the artist's expression of the idea on each flag was in some way original and creative, and that the artist made artistic decisions unique to that flag. *Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1212–13 (8th Cir.1986); *Durham Industries, Inc. v. Tomy Corporation*, 630 F.2d 905, 910 (2d Cir.1980) (collecting cases); 1 Nimmer, *Nimmer on Copyright*, § 2.01[A–B] (1990) (hereinafter "Nimmer"). The jury found no originality in ten of the sixteen flags. The jury could have, and apparently did, find that plaintiff did not offer sufficient evidence of original

design, and that plaintiff failed to show adequate creativity on the part of the artist. Given the testimony of the witnesses with regard to popular craft motifs, and the fact that plaintiff offered little evidence with regard to creative or artistic expression, the Court holds that the jury's verdict on originality must stand.

■ Plaintiff must also prove title in order to demonstrate ownership of a valid copyright. *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484, 486 (1st Cir.), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985); 3 Nimmer, § 12.11[C]. As to title, the jury found that plaintiff possessed valid title to eight of the sixteen flags in question, but that plaintiff lacked valid title on the other eight flags. Plaintiff expresses particular concern over the jury's finding of no valid title with regard to the "Skier" and "Welcome Spring" flags. Plaintiff's JNOV Memorandum at 16.

While the Court will not disturb the jury's other findings regarding title, the Court agrees with plaintiff that the jury's finding of no title on the "Skier" and "Welcome Spring" flags was erroneous in light of the documentary evidence of title. Transfer of title to plaintiff from Ms. Stewart, the former president of Flag Fables, and alleged creator of many flags, as evidenced by written assignment, would appear to conclusively settle the title issue in plaintiff's favor. *Motta*, 768 F.2d at 484 (non-author plaintiff must establish proprietary right through chain of title to prove ownership of copyright). Plaintiff also offered certified registrations from the U.S. Copyright office as *prima facie* proof of ownership. 17 U.S.C. § 410(c); *Durham Industries*, 630 F.2d at 908.

Defendants did not rebut plaintiff's evidence of title. Defendants now, however, contend that the certified registrations offered into evidence by plaintiff contained no identifying material for either "Welcome Spring" or "Skier." That is, defen-

---

questions. Upon receiving the third question, the judge notified counsel for the first time. On appeal, the First Circuit found that the questions sent to the judge by the jury suggested jury

confusion, and that the Court should have notified and considered counsel's comments. *Voutour*, 761 F.2d at 817.

dants argue that the certified registrations do not indicate what design plaintiff actually owned. While this may technically be true, defendants have never before argued that the flags named in the registrations are anything but the flags in question, and no party has offered evidence to this effect. Thus, the Court now holds that the jury did in fact err in determining that plaintiff did not possess valid title to copyrights for "Welcome Spring" and "Skier."

This conclusion is without import, of course, given the plaintiff's failure to comply with the notice formalities. The Court will not order a new trial based on the jury's error with regard to title. The Court's determination that plaintiff actually provided unrebutted *prima facie* evidence of title cannot correct or make up for plaintiff's notice omissions.

In summary, the Court denies in its entirety plaintiff's motion for judgment notwithstanding the verdict and for a new trial.

## B. Plaintiff's Motion for an Order Compelling Discovery

■ Pursuant to Federal Rule of Civil Procedure 26 and the local rules of discovery, plaintiff moves for an order to compel defendants to submit to discovery. Plaintiff apparently seeks documents used and created in relation to the flag notice survey conducted by Ms. Craven. Plaintiff claims to need these documents for use on appeal or in a new trial. Plaintiff insists that by failing to produce these unidentified documents upon plaintiff's request before trial, defendants failed to comply with discovery obligations, and caused plaintiff to suffer unfair prejudice.

Defendants flatly deny having concealed any documentation. Defendants contend that they produced the entire survey, including back-up sheets used to prepare the survey and affidavits of flag owners, immediately upon request of plaintiff's counsel.

Both Rule 26 and the local rules anticipate the use of discovery devices to unearth evidence before or during a trial. The rules make no explicit provision for post-trial discovery, and the Court knows of no case where post-trial discovery was allowed.

The trial is over; *a fortiori*, discovery is over. Plaintiff has argued that the Court should have excluded the survey based on discovery transgressions and statistical shortcomings. As noted above, the Court considered these arguments, but decided to allow the survey into evidence subject to a cautionary instruction from the Court. Plaintiff has a right to appeal this determination. Having decided to admit the survey, and even accepting as true plaintiff's accusations of unfair play, the Court will not sanction an ill-defined, post-trial discovery expedition.

## C. Defendants' Motion for Costs, Attorney's Fees and Sanctions

### 1. Costs and Attorney's Fees

■ Pursuant to 17 U.S.C. § 505, defendants have moved for an award of costs, including reasonable attorney's fees.[10] Section 505 provides as follows:

**Remedies for infringement: Costs and attorney's fees**

In any civil action under [the Copyright Act], the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Plaintiff, of course, opposes defendants' motion, and urges the Court to award defendants no costs.

The First Circuit Court of Appeals has never decided whether, or under what circumstances, a prevailing defendant in a

---

**10.** The Court may include, as part of the costs award, an award of reasonable attorney's fees. 17 U.S.C. § 505. An award of attorney's fees is not separate from a costs award. An award of attorney's fees, if any, is "part of the costs," and the question of whether to award costs necessarily includes the attorney's fees question. Thus, the Court will make only one section 505 determination, and it will resolve issues of attorney's fees and costs together.

copyright action should recover costs. In *Hebert v. Wicklund,* 744 F.2d 218, 223 (1st Cir.1984), the court acknowledged "substantial case support" for the notion that a prevailing defendant could recover costs only upon a showing of plaintiff's bad faith. However, the court did not discuss the supporting cases, and offered no opinion of its own on the issue.

Federal courts around the nation have failed to reach a consensus on the issue. While all courts agree that the district court has broad discretion in deciding whether, and in what amount, costs will be allowed, 17 U.S.C. § 505, *see* 3 Nimmer §§ 14.09, 14.10 (collecting cases), numerous courts have held that costs should be awarded to a prevailing defendant only if the plaintiff's suit was frivolous, baseless, unreasonable, or brought in bad faith. *Bibbero Systems, Inc. v. Colwell Systems, Inc.,* 893 F.2d 1104, 1108 (9th Cir.1990); *Diamond v. Am–Law Publishing Corp.,* 745 F.2d 142, 148 (2d Cir.1984) (Prevailing defendant may recover costs only when plaintiff's claims are "objectively without arguable merit."); *Motta v. Samuel Weiser, Inc.,* 633 F.Supp. 32, 33 (D.Me.1986); *Dean v. Burrows,* 732 F.Supp. 816, 826–27 (E.D.Tenn.1989). Plaintiff argues that this bad faith rule should govern in the case at bar.

Other courts hold that a prevailing party need not show any bad faith or unreasonableness in order to recover costs. *Sherry Manufacturing Company, Inc. v. Towel King of Florida, Inc.,* 822 F.2d 1031, 1034 (11th Cir.1987); *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 155–56 (3rd Cir. 1986); *Cohen v. Virginia Electric & Power Co.,* 617 F.Supp. 619, 621–23 (E.D.Va. 1985), *aff'd* 788 F.2d 247 (4th Cir.1986). Defendants urge the Court to adopt this rule.

Having considered the authorities, the Court agrees with plaintiff, and concludes that a prevailing defendant in a copyright action should recover costs under section 505 only where plaintiff's suit was frivolous, baseless, or prosecuted in bad faith. The Court prefers this rule because it assures that a plaintiff who brings a color-

able claim under the copyright laws will not be penalized for attempting to vindicate those rights. Were this Court to adopt a different rule, a plaintiff who has a difficult yet colorable copyright claim might refrain from initiating a lawsuit due to fear of having to pay defendant's costs in the event that the claim should fail.

■ Defendants argue that even under the bad faith rule, the Court should grant costs to defendants. Defendants allege that plaintiff failed to disclose public domain sources on plaintiff's copyright application, that plaintiff made false statements to the Court, that plaintiff failed to negotiate in good faith, and that plaintiff otherwise wrongfully brought and pursued the action. Because of this evidence of bad faith, defendants argue, an award of costs is appropriate.

The Court disagrees with defendants, and now holds that plaintiff's copyright claims were not frivolous, unreasonable, or brought in bad faith. A party must show two elements in order to prevail on a copyright infringement claim, including ownership of a valid copyright and copying of protected work by alleged infringer. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 605 (1st Cir.1988).

At trial, plaintiff argued and offered evidence in an effort to establish both elements of a copyright infringement action. Plaintiff offered certificates of copyright registration, written assignments and testimony of witnesses in an attempt to establish ownership of a valid copyright. Ms. Diamond, Ms. Stewart and other witnesses testified as to the original nature of Flag Fables' flags. Some of plaintiff's witnesses testified that plaintiff attempted to satisfy the notice requirements. Plaintiff also presented evidence of copying by defendants. Many of defendant's flags bore striking resemblance to plaintiff's flags. Deborah Rickless, a sewer familiar with the facts at issue, testified that Ms. Fede admitted sketching some of Flag Fables' designs, and using those sketches while making flags for Jean Ann's Country Flags and Crafts. In short, while plaintiff's copy-

right infringements claims were unsuccessful, they were not frivolous or lacking in arguable merit. Therefore, the Court will not burden plaintiff with costs.

Further, even if the Court decided that defendants need not show plaintiff's bad faith or unreasonableness in order to recover costs, the Court in its discretion would still not allow costs. This was a close case. Indeed, the Court found plaintiff's allegations and initial evidence sufficient to support a preliminary injunction. The parties furiously disagreed on the facts, and the jury struggled with difficult and unfamiliar legal concepts. Bad blood between the litigants and opposing counsel further complicated matters for the Court. Discovery proved particularly troublesome, as each side accused the other of unsportsmanlike conduct. Under these circumstances, the Court decides that each party should bear its own costs.

2. Rule 11 Sanctions

Defendants have moved for sanctions pursuant to Federal Rule of Civil Procedure 11. They assert that while plaintiff's conduct justifies a sanction, it is also an alternative way for the Court to award defendants' attorney's fees. Plaintiff, of course, asserts that it has engaged in no sanctionable activity, and that the Court should deny defendants' motion for sanctions.

 Rule 11 provides that the Court shall impose an appropriate sanction on any party or counsel that has signed a pleading "not well grounded in fact." The Rule is designed in part to discourage parties or attorneys from filing pleadings that they know or should know contain misleading or false information. If the Court, upon consideration of the case, discovers a Rule 11 violation, the Court must impose some sort of sanction on the offending party. *Figueroa–Ruiz v. Alegria*, 905 F.2d 545, 548 (1st Cir.1990) (collecting cases). The Court's discretion extends only to determining what kind of sanction is "appropriate." *Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 841 (1st Cir.1990). Appropriate sanctions may include fines, *Bay State Towing*

*Company v. Barge American 21*, 899 F.2d 129 (1st Cir.1990), public reprimand, *Unanue–Casal, supra*, or any other sanction deemed to fit the misdeeds. Fed.R.Civ.P. 11 advisory committee's note ("The court ... has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted.").

 Having examined the transcripts, affidavits, and the post-trial pleadings filed by both parties, the Court finds that plaintiff has not stepped beyond the bounds set by Rule 11. Notwithstanding defendants' protestations to the contrary, plaintiff has convinced the Court that its motion to amend the complaint contained no falsehoods. Plaintiff's statement that many registrations had not issued from the U.S. Copyright Office as quickly as planned does not constitute an intentional misstatement or deception.

Similarly, the Court is not persuaded by defendants' public domain arguments. Citing *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980 (S.D.N.Y. 1980), defendants argue that plaintiff intentionally failed to disclose public domain sources upon which a number of Flag Fables' flags were allegedly based. Defendants contend that by wrongfully failing to name public domain sources on the copyright registration applications, and by arguing that those omissions were permissible, plaintiff acted in bad faith.

The Court finds this argument unpersuasive. In *Russ Berrie*, plaintiff Berrie produced a stuffed gorilla, aptly named "Gonga." Berrie received a copyright for Gonga, and he did not name any public domain sources for the gorilla. However, Gonga closely resembled a gorilla already in production by a Japanese company and currently on retail shelves in this country. The parties agreed that Berrie went to the Orient to inspect the Japanese gorilla, and soon thereafter produced the look-alike Gonga. The district court held that Berrie knowingly failed to disclose public domain sources to the copyright office, to wit, the Japanese gorilla. Thus, the district court found reason to hold Berrie's copyright invalid. *Russ Berrie*, 482 F.Supp. at 988.

In this case, plaintiff concedes that Flag Fables' flags incorporate unprotectible craft motifs and ideas such as pineapples, shaker houses, watering cans, and so forth, but plaintiff contends that it rightfully used those ideas in creating the flags in question. Plaintiff's consistent position has been that, unlike Berrie in the *Russ Berrie* case, plaintiff did not improperly borrow expression from any existing public domain sources. Regardless of the success of these claims, the Court finds no bad faith in plaintiff's public domain arguments. Plaintiff has argued in good faith that its flags were unique works based not on pre-existing expressions but on common country craft ideas. In various pleadings, plaintiff was entitled to, and did, make reasonable arguments that it had no obligation to list certain articles as public domain sources. In sum, plaintiff's pleadings, with regard to originality and public domain sources, were "well grounded in fact and ... warranted by existing law." Fed.R.Civ.P. 11.

The Court also finds defendants' other Rule 11 allegations without merit. Therefore, the Court will assess no sanctions.

*D. Defendants' Motion to Recover Against Bond*

■ Defendants have moved to recover against plaintiff's $20,000 bond. As noted above, plaintiff posted the bond as a condition of the injunction, and for the protection of defendants should they prevail in the action. Plaintiff opposes the motion.

Rule 65(c) reads in relevant part as follows:

(c) **Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Courts· require security, ordinarily in the form of a surety bond, upon the issuing of equitable relief in order "to protect the party restrained or enjoined against 'costs and damages' incurred or suffered by the party wrongfully restrained or enjoined." 7 J. Moore, J. Lucas & K. Sinclair, *Moore's Federal Practice* ¶ 65.09 (2d ed. 1990). The bond will only cover "costs and dam-- ages" due directly to the injunction itself; the bond does not provide a means of recovery for the party who happens to succeed in the underlying action. *Northeast Airlines, Inc. v. Nationwide Charters and Conventions, Inc.*, 413 F.2d 335, 338 (1st Cir.1969); *Medafrica Line, S.P.A. v. American West African Freight Conference*, 654 F.Supp. 155, 156 (S.D.N.Y.1987). Of course, a party who wishes to recover against a bond may recover only "whatever damages, if any, they may be able to establish that they suffered by reason of ... the preliminary injunction." *Northeast Airlines, supra.*

■ In this case, the Court "wrongfully enjoined" defendants because the Court's order prevented defendants from doing something which they had a legal right to do. "A party has been 'wrongfully enjoined' under Fed.R.Civ.P. 65(c) if it is ultimately found that the enjoined party had at all times the right to do the enjoined act." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir.1990). Having been "wrongfully enjoined" from selling certain flags, defendants deserve compensation for any losses that they can establish resulted from the injunction. Defendants have alleged losses in the sum of $17,500, based on estimates of lost gross sales, lost repeat customers, estimated rates of business growth, lost interest, and so forth.

Plaintiff argues, and the Court agrees, that to allow defendants to collect on the bond would essentially allow defendants to collect twice for the same injury. This Court will not permit duplicative recoveries; a wronged party may recover appropriate damages only once. *See Refuse & Environmental Systems, Inc. v. Industrial Services of America*, 732 F.Supp. 1209, 1213 (D.Mass.1990) (Freedman, C.J.). In this case, defendants recovered $75,600 on the counterclaim for malicious interference with contractual relations. Defendants' evidence on damages included evidence of

lost profits as a consequence of the injunction. Having examined all the evidence of damages adduced at trial, the Court determines that the jury award accounts for defendants' lost profits. Recovery against the bond would therefore be duplicative.

## IV. CONCLUSION

For the reasons stated above, the Court

1) DENIES plaintiff's motion for judgment notwithstanding the verdict and for a new trial,

2) DENIES plaintiff's motion to compel discovery,

3) DENIES defendants' motion for costs, attorney's fees and sanctions, and

4) DENIES defendants' motion to recover against bond.

It is So Ordered.